SANDERS, ADMINISTRATOR, ET AL., RESPONDENTS, *v.* MC-DONALD ET AL., APPELLANTS.

(No. 8,086.)

(Submitted March 3, 1941. Decided April 5, 1941.)

[111 Pac. (2d) 1043.]

*Mr. James G. Castles, Mr. J. J. McCaffery* and *Mr. S. P. Wilson* for Appellants, submitted a brief; *Mr. Wilson* and *Mr. J. D. Taylor,* of Counsel, argued the cause orally.

*Mr. Lester H. Loble* and *Mr. Hugh R. Adair,* for Respondents, submitted a brief; *Mr. Loble* and *Mr. Melvin E. Magnuson,* of Counsel, argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

This is a companion case to Cause No. 8137, *Sanders v. Lucas, Lucas* and *McDonald,* this day decided, and involves the other undivided two-thirds interest in the same two adjacent sections of land in different townships which we will designate here simply as sections 1 and 31. This suit, like the other, was instituted by Mrs. Ike Sanders and after her death Wilbur Sanders, as administrator with the will annexed, and as sole legatee and devisee under the will, was substituted as party plaintiff.

The amended complaint alleges that the defendant J. J. McDonald is an attorney at law and that the defendant Madilon McDonald is his wife; that Mrs. Ike Sanders was an illiterate woman of foreign birth with a meager understanding of the English language and of business and resided on a ranch in a sparsely settled part of Granite county with no close neighbors, friends or relatives; that up to October 17, 1938, McDonald was and for about fifteen years had been her attorney at law and her confidential business advisor; that he had her full confidence and trust and exercised complete influence over her with reference to business transactions; that on October 8, 1938, plaintiff was and at all times thereafter continued to be the owner of an undivided two-thirds interest in the two sections and in actual possession thereof except as to certain portions leased by her to others; that on the latter date the defendants

came to her ranch and falsely and fraudulently represented to plaintiff that it was to her interest and for her protection and for the convenient handling of her property and business to sign a deed transferring her interest in the two sections to the defendant Madilon McDonald, and that if she would do so they would at any time upon her demand return the deed or reconvey the property to her; that plaintiff believed the representations, and relying upon them and upon defendant's promises to reconvey, signed the deed; that plaintiff had no independent advice and would not have signed the deed but for the representations and promises of the defendants; that J. J. McDonald took possession of the deed, executed plaintiff's acknowledgment thereto as a notary public, and filed it for record in the office of the county clerk and recorder of Granite county; that the deed appears of record and constitutes a cloud on plaintiff's title; that the property is worth in excess of $7,500; that on October 17, 1938, plaintiff demanded a reconveyance of the property to her and that the defendants refused, Madilon McDonald claiming to hold it in trust for J. J. McDonald and the latter claiming to have paid a valuable consideration for it. The prayer is that Madilon McDonald be adjudged a trustee of the property for plaintiff, and that she be required to reconvey it to her; that it be adjudged that the defendants have no right, title or interest in the property by virtue of the deed, and that plaintiff's title be quieted as against them.

In their answer the defendants joined issue with the allegations relative to the transaction, alleged that Madilon McDonald claimed to be the owner of the property, held record title thereto, and refused to reconvey to plaintiff, and admitted that J. J. McDonald had asserted that the deed was given for a valuable consideration. At the trial the defendants were permitted to amend their answer by pleading as an affirmative defense that before her death Mrs. Sanders had executed a deed conveying the property in question to one A. M. MacDonald, and had no interest therein at the time of her death.

The case was tried by the court without a jury, and findings of fact, conclusions of law and judgment were rendered in

plaintiff's favor. The court found that the allegations of plaintiff's amended complaint were true and correct; that J. J. McDonald claimed that Mrs. Sanders was indebted to him in the sum of $2,500 as a retainer for attorney's fees for five years at $500 per year; that gold had been found on the land in question during the summer of 1938, and that the land had a reasonable value far in excess of $2,500; that aside from the land Mrs. Sanders' holdings were modest, consisting of a life interest in the home ranch, the usual livestock and farming implements and household furniture; that no such agreement for retainer was ever executed but that J. J. McDonald had rendered her attorney's services for several years in minor legal matters and that a fair, compensation for them would not exceed $200, and that there was no evidence whether they were paid or unpaid, or whether any sum was due thereon; that J. J. McDonald had no book account showing any indebtedness and made no demands upon her or her estate for payment.

The conclusions of law were that the defendants' acts in taking title to the property in Madilon McDonald's name and in refusing to reconvey on demand constituted constructive fraud; that Madilon McDonald was holding the record title as trustee for Mrs. Sanders' estate and that neither of the defendants had any right, title or interest in the property. The decree accordingly cancelled the deed as fraudulent, null and void.

There are thirty specifications of error, seventeen of which relate to the court's rejection of defendants' proposed findings of fact and conclusions of law and to the insufficiency of the evidence to sustain the court's findings and conclusions, and to the rendering of judgment for plaintiff and against defendants, and to the overruling of defendants' motion for a new trial. Eleven specifications of error were to orders sustaining or overruling objections to the admission of specific evidence, and two specifications urge error in overruling objections to the substitution of the administrator and sole heir and legatee as party plaintiff.

We shall first dispose of the last two mentioned specifications. ▮ The order for the substitution was made nearly three months before trial, after a hearing at which both sides were represented, but no complaint is made as to that order. The specifications assign error only to the overruling of "defendants' objection made at the opening of the trial to the substitution of Wilbur Sanders" and of "defendants' motion at the close of the trial to refuse to substitute Wilbur Sanders" as party plaintiff. Since no error is assigned to the original order of substitution, and since the matter of substitution was not properly before the court for decision either at the opening or the close of the trial, it does not appear that these specifications raise any substantial question. However, in any event they must be overruled. The objection made is that prior to her death Mrs. Sanders had by deed conveyed to one A. M. MacDonald all her interest in the property in question, and that her personal representative, legatee and devisee succeeded to nothing, and therefore is not a proper party plaintiff. But the evidence shows that the deed to A. M. MacDonald purported to convey only section 1, and that Mrs. Sanders was still the record owner of section 31 at the time of her death. There is only one cause of action—to set aside a deed—and the fact that she subsequently made a conveyance of part of the property to another did not divest her of the rest of it, or of all interest in the cause of action. Her administrator and successor in interest was clearly entitled to be substituted as party plaintiff. It is well settled that a transfer by plaintiff of a part of his interest will not abate the suit (1 C. J. 143, sec. 221; 1 C. J. S. 150, sec. 106b). The fact being that the original plaintiff did not subsequently divest herself of all her title to the property described in the deed under attack here, it is unnecessary to consider the effect of section 9086, Revised Codes, our survival and substitution statute, where there is a complete divestiture of title.

Six of the eleven specifications relating to specific items of ▮ evidence were directed against the admission of the depositions of Mr. and Mrs. Lucas and the envelope in which they

were returned to the clerk of the court. These depositions were taken in the companion cause above referred to, which was brought by plaintiff against the defendant J. J. McDonald and Mr. and Mrs. Lucas to establish her right to a deed for the Lucas one-third interest in the property under the $1,000 option referred to in that suit. None of these specifications are argued in appellants' brief; however, we may say in passing that an examination of the documents in question discloses nothing which could have adversely affected them in this suit. They relate to matters already before the court in evidence to which no specification of error has been directed; and subsequently the defendants introduced into the record as one of their exhibits the entire file in the Lucas case, including J. J. McDonald's deposition relating to the same transaction. No harm having been done the appellants by the admission of these documents, and the specifications of error relating thereto not being argued, it is unnecessary to consider whether their admission was erroneous.

Four others of the specifications relating to specific items of evidence complain of the sustaining of objections to questions asked Wilbur Sanders with reference to counsel who had originally brought the suit and had later withdrawn from it, and to questions in which it was sought to obtain the legal conclusion of one of the former counsel concerning a written option which is in evidence. These specifications are not argued by appellant and it seems clear that the rulings objected to are not erroneous, and if there were any error it would be harmless since the matters sought to be introduced were already in the record.

The other specification relating to particular evidence complains of the court's action in overruling an objection to a question asked of defendant J. J. McDonald, whether in his income tax reports for 1938 he included as $2,500 income the deed originally taken by him as payment of fees to that extent. The question is immaterial, since if his income was reported on an accrual basis it should have been shown as accruing at the rate of $500 each year, and if his income was reported on a

cash basis, it need not be shown until received in cash. (*In re Newman*, (C. C. A. 6) 94 Fed. (2d) 108.) But the specification is not argued by appellant and the error would seem in any event to have been harmless.

The other specifications, while directed at the findings, conclusions, decree and order overruling motion for new trial, raise only the alleged insufficiency of the evidence. It is obvious that the findings of fact sustain the conclusions of law, and that the latter sustain the decree, thus leaving the sole question whether the findings are sustained by the evidence.

As stated in the companion case above referred to and this day decided, this court's province, where the evidence is conflicting, is merely to ascertain whether there is any substantial evidence to support the findings.

The question is whether the deed was given by Mrs. Sanders for a valuable consideration as contended by the defendants, or whether it was obtained by them fraudulently and without consideration. The court found that the latter was true, and it cannot be said that there is no substantial evidence to sustain that finding. Unfortunately, the original plaintiff, whose trouble like that of John Sutter seems to have originated with the discovery of gold on her land, did not survive to testify at the trial. But the evidence of her son, Wilbur Sanders, who was present during the incident at which the deed was given, if standing entirely alone would constitute substantial evidence to sustain the findings, and his testimony has ample support in the surrounding circumstances and in the manner and nature of the defendants' testimony which, to say the least, can hardly be characterized as candid or in accord with the probabilities in several respects.

Wilbur Sanders testified that the defendants came to the ranch and asked to see the option which Mrs. Sanders had given A. M. MacDonald to buy section 1 for $2,500, the price paid by her for the two sections before gold was discovered; that J. J. McDonald said that the property was worth much more than that and produced a blank deed which he said would protect her from the option; that his mother had confidence in

McDonald, who had been the family attorney for years, and that with little discussion she signed the deed, and that Mc-Donald took it away with him; that nothing was said about Mrs. Sanders owing McDonald any money or about any consideration for the deed until demand was made eight days later that the property be reconveyed. While the defendants testified to the contrary, it cannot be said that plaintiff's evidence was not substantial or that defendants' evidence preponderated strongly against it. This would be true even if it were plausible that a woman situated as Mrs. Sanders was with little but a life interest in a small ranch, a few cattle, no substantial legal or business difficulties and undoubtedly a very small cash income, would have agreed to pay a legal retainer of $500 per year; or that her attorney would not have attempted to collect it for over five years; or that after she had acquired additional grazing property and it had proven to be valuable for gold mining purposes and she now had prospects of receiving sufficient money to pay him, he would immediately come to her ranch and ask her to sign a deed already prepared, conveying the property to him, instead of attempting to collect his fees in cash or by an assignment of option payments; or that she would, without hesitation under those circumstances, convey to him her only valuable property for the same amount for which she had bought it before gold was discovered. In addition, J. J. McDonald's testimony was that there was no definite agreement by Mrs. Sanders to pay him $500 per year, but that he had told her how much he would charge as her attorney, and that she had merely failed to object to the amount named.

Under this state of the facts, it seems manifest that the judgment must be affirmed, and it is accordingly so ordered.

ASSOCIATE JUSTICES ANGSTMAN, ERICKSON, ANDERSON and MORRIS concur.