PEOPLE'S SAVINGS BANK *v.* VAN ALLSBURG.

1. FRAUDULENT    CONVEYANCES—BULK-SALES    LAW—FIXTURES—
    WORDS AND PHRASES.
      Vehicles, harness, caskets, and appliances used in the business
      of an undertaker are not fixtures within the meaning of the
      bulk-sales law (Act No. 223, Pub. Acts 1905).[1]

2. SAME—MERCHANDISE.
      But caskets, robes, and hardware bought to resell in the under-
      taking business are merchandise within its terms.

3. SAME—CREDITORS—STATUTES.
      Act No. 223, Pub. Acts 1905, applies to no particular class of
      creditors, but to all the creditors of the seller.

Error to Kent; Perkins, J.  Submitted October 7, 1910.
(Docket No. 13.)  Decided May 8, 1911.

Garnishment proceedings by the People's Savings Bank
against Arie Van Allsburg and Louis Van Allsburg.  A
judgment for plaintiff on a verdict directed by the court is
reviewed by defendants on writ of error.  Reversed.

*Hatch & Raymond,* for appellants.

*Smedley, Hall & Freeland,* for appellee.

BIRD, J.  After obtaining a judgment in the Kent cir-
cuit court against Edward Howell, the plaintiff garnished
the defendants, who were purchasers of Howell's under-
taking business, stock, and appliances.  The defendants
disclosed that they had no money or property in their pos-
session belonging to Howell, and that they were not in-
debted to him.  The plaintiff was not content with this
disclosure, and instituted this suit under the statute to
test the truth of the disclosure.  After a hearing on the
merits, the trial court directed a verdict for the plaintiff

[1] As to what kind or classes of property are within the operation
of bulk-sales statutes, see note in 25 L. R. A. (N. S.) 758.

in the sum of $515.89; the same being in full amount of their judgment against Howell. The reason for the direction was the failure of the defendants to comply with the bulk-sales law (Act No. 223, Pub. Acts 1905) in making the purchase from Howell.

Howell was, prior to the sale, carrying on the undertaker's business in Coopersville. In November, 1908, he transferred to defendants, by bill of sale, the following described property:

"One funeral car, one casket wagon, two sets of bobs, two sets of double harness, one rubber-tired buggy, one lowering device, three floor rugs, one church truck, three cooling boards, one slumber robe, five door badges, two pair of pedestals, one set of embalming tools, two candelabra, four dozen chairs, one roll-top desk, two cases of embalming fluid, one earth cover, one set of funeral nets, and all other fixtures used in the undertaking rooms of said first party, and all caskets, steel vaults, robes, and casket hardware, belonging to E. W. Howell and now in his possession at his undertaking rooms in the Davis Building."

When the purchase was made, no attempt was made to comply with Act No. 223. The defendants insist that the sale did not come within the provisions of Act No. 223, and, therefore, no notice to the creditors of Howell was necessary, and that the trial court was in error in directing a verdict for the plaintiff.

The important assignments of error are:

*First.* Was any of the personal property conveyed fixtures?

*Second.* Was any of the personal property conveyed merchandise?

*Third.* Does Act No. 223 require notice to creditors other than merchandise creditors?

1. Was any of the property fixtures? The property conveyed was not of a character which would admit of its becoming annexed to real estate. It was not designed to be a fixture, and was not used or treated as such. Most of the property conveyed was similar in kind to that conveyed in the case of *Bowen* v. *Quigley, ante,* 337

(130 N. W. 690), decided March 31, 1911, and we think this question is ruled by that case.

2. Was any of the property merchandise? Merchandise is defined by Webster as "objects of commerce; whatever is usually bought and sold in trade or market by merchants." We think that "merchandise," as used in this act, must be construed to mean such things as are usually bought and sold in trade by merchants. Measured by this standard, the caskets, steel vaults, robes, and casket hardware must fall within the meaning of that term. These articles were bought to sell again. They were not purchased with the intent to keep or use in his business. The fact that they were not sold singly, but were usually sold in connection with a casket, would not take away from them the character of merchandise.

3. Does Act No. 223 require notice to creditors other than merchandise creditors? Section 1 of the act provides that the sale shall be void as against *the* creditors of the seller, unless the statutory notice is made giving a *full, accurate,* and *complete* list of his creditors. Section 3 provides that if the purchaser does not comply with the provisions of the act, upon application of *any* of the creditors he shall become a receiver, etc., and the same section further provides that if he shall conform to the provisions of the law he shall not be liable to *any* of the creditors of the seller. If the legislature intended to restrict the notice to any particular class of creditors, it did not so indicate by the language used. The language made use of is clear and free from ambiguity, and no room is left for the contention that the legislature intended it to apply to any particular class of creditors.

A determination of these questions we think will render it unnecessary to pass upon the other assignments of error.

The judgment of the trial court is reversed, and a new trial ordered.

OSTRANDER, C. J., and HOOKER, MOORE, and MCALVAY, JJ., concurred.