**WILKINSON–BEANE, INC., Petitioner, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent, Appellee.**

**No. 7380.**

United States Court of Appeals First Circuit.

Heard Nov. 3, 1969.

Decided Jan. 12, 1970.

Arthur H. Nighswander, Laconia, N. H., with whom Nighswander, Lord & Martin, Laconia, N. H., was on brief, for appellant.

Richard Farber, Atty., Dept. of Justice, with whom Johnnie M. Walters, Asst. Atty. Gen., and Meyer Rothwacks and Loring W. Post, Attys., Dept. of Justice, were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

 This is an appeal from a decision of the Tax Court upholding a deficiency assessment against Wilkinson-Beane, Inc., a Laconia, New Hampshire, undertaking establishment, for the calendar years 1963 and 1965.[1] The basis for the deficiencies was a determination by the Commissioner that the cash receipts and disbursements method of accounting used by the taxpayer did not clearly reflect its income. Accordingly, the Commissioner recomputed taxpayer's income using the accrual method, thereby arriving at increased tax liabilities for the years in question.[2] The Tax Court sustained the Commissioner's determination. The issue presented by this appeal is whether the Tax Court correctly upheld the Commissioner's ruling that taxpayer's accounting method failed to reflect income clearly and the requirement that taxpayer adopt the accrual method of accounting.[3]

Taxpayer, as well as the preceding proprietorship, used the cash method of accounting. Hence, gross receipts for the years prior to those which the Commissioner seeks to recompute on the accrual basis do not include any accounts receivable arising but not collected in those years. Since the change in accounting methods would require all receivables outstanding at the start of the first year computed on the accrual basis to be reflected in income for that year, the major effect of the change would be to include both accumulated and current accounts in income for 1963, thereby distorting taxpayer's income for that year.[4]

Taxpayer provides a complete funeral service, including the casket, which can-

---

1. Wilkinson-Beane, Inc., ¶ 69,079 P–H Memo·T.C. (1969).

2. For 1963, there was an increase in income of $31,279.74 and a deficiency assessment of $9,383.92. For 1965 the increase in income was $4,192.76 and the deficiency was $876.28. Recomputation for 1964 showed an overassessment of $1,099.53.

3. We are, of course, mindful of our narrow scope of review. The Commissioner's selection of an accounting method may be "challenged only upon a clear showing that he abused his discretion." Standard Paving Co. v. Commissioner, 190 F.2d 330, 332 (10th Cir.), cert. denied, 342 U.S. 860, 72 S.Ct. 87, 96 L.Ed. 647 (1951); see United States v. Catto, 384 U.S. 102, 114, 86 S.Ct. 1311, 16 L.Ed.2d 398 (1966); Michael Drazen, 34 T.C. 1070, 1076 (1960). Moreover, we must affirm the decision of the Tax Court unless it is clearly erroneous.

4. The distortion arises from the "bunching" of accumulated and current receivables in 1963 income. If the cash method was consistently used, accounts arising but not collected in 1963 would not be reflected in income until succeeding years. If the accrual method was consistently used, accounts arising in preceding years and carried into 1963 uncollected would have been reflected in income for prior years. It is the change in accounting systems which results in the distortion.

not be purchased separately.[5] Related services include use of the funeral home, hearse, motor vehicles, funeral personnel and management, as well as ambulance service and transportation of the body. A single, unitemized price is charged for the complete service. People select the service desired by choosing among caskets in taxpayer's establishment, each of which bears a card stating the total cost of the funeral with which the particular casket is provided. Better caskets are provided with more expensive funerals and therefore serve as inducements for people to pay a higher fee for the complete service.

Section 446(b) of the Internal Revenue Code of 1954 provides in part that if the method of accounting regularly employed by the taxpayer "does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income." Section 471 empowers the Commissioner, when in his opinion "the use of inventories is necessary in order clearly to determine the income of any taxpayer," to require inventories. Treas.Reg. § 1.471–1 (1958) provides that "[i]n order to reflect taxable income correctly, inventories * * * are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor." Completing the statutory scheme, Treas. Reg. § 1.446–1(c) (2) (i) (1957) states that "[i]n any case in which it is necessary to use an inventory the accrual method of accounting must be used with regard to purchases and sales unless otherwise authorized under subdivision (ii) of this subparagraph." It is through the interaction of these provisions that this taxpayer was compelled to report its income on the accrual basis.

Taxpayer seeks to avoid the application of Treas.Reg. § 1.471–1. It argues first that the caskets used in its business are not "merchandise" as contemplated by Treas.Reg. § 1.471–1, but are merely incidental supplies necessary to the performance of its professional services. See Elbridge L. Walker, ¶ 56,110 P–H Memo T.C. (1956). It claims that the caskets are part of its services, similar to embalming or funeral supplies or the suits and dresses used to clothe the deceased, and therefore can be deducted to the extent used in operations during the year.

■ In construing the word "merchandise" we apply the rule that "[t]he natural and ordinary meaning of the words used will be applied [in construing tax statutes] unless the Congress has definitely indicated an intention that they should be otherwise construed * * *." Huntington Securities Corp. v. Busey, 112 F.2d 368, 370 (6th Cir. 1940).

■■ The Tax Court recognized the lack of any clearly pertinent definition of "merchandise" in the relevant tax sources. Treas.Reg. § 1.471–1 suggests that merchandise should be included in inventory only if title thereto is vested in the taxpayer. A canvassing of authorities in the accounting field yields several definitions, such as "goods purchased in condition for sale," "goods awaiting sale," "articles of commerce held for sale," and "all classes of commodities held for sale."[6] Clearly, the meaning of the term must be gathered from the context and the subject. See New England & Savannah Steamship Co. v. Commonwealth, 195 Mass. 385, 389–391, 81 N.E. 286, 288–289 (1907) (steamships merchandise in excise tax statute); People's Savings Bank v. Van Allsburg, 165 Mich. 524, 131 N.W. 101 (1911) (caskets merchandise within Bulk Sales Law). The common denominator, however, seems to be that the

---

5. Taxpayer normally keeps an inventory of some thirty-five caskets, primarily because Laconia is remote from a ready source of supply. Caskets are not necessarily used during the year in which they are purchased and occasionally are carried for long periods, as they cannot be exchanged.

6. Wilkinson-Beane, Inc., *supra*, at 69–484.

items in question are merchandise if held for sale.

The Tax Court found that Wilkinson-Beane's fees for funeral services were based largely on the cost of the casket and the financial situation of the individual customer. The evidence showed that taxpayer, in accordance with the ethics of the profession, accepted cases regardless of the financial plight of the client. Fees were often below cost or uncollectable. Although the cost of the complete service was priced to compensate for charity cases, the Tax Court still perceived a direct relationship between the magnificence of the caskets and the prices charged.

Taxpayer seeks to diminish the importance of caskets to its business. We cannot accept its reasoning. As the Tax Court said,

"We are not demeaning the honored profession of undertaking by holding that the caskets here involved were purchased for sale and sold as merchandise and must be so treated for income tax purposes. We fully recognize that petitioner was in the business of providing valuable services. But we think it would be anomalous to hold that a taxpayer in a service business can have no merchandise even though he derives a substantial portion of his income from the regular purchase and sale of tangible personal property. We certainly have no basis for so restricting the application of the word 'merchandise.' " ¶69,079 P–H Memo T.C., at 69–484.

Since the caskets play a central role in the "sale" of taxpayer's service, to use its term, we see no error in the determination that the caskets were merchandise.

Taxpayer next contends that the caskets are not an income-producing factor.[7] This point is rather easily disposed of. In 1963 and 1965, respectively, the cost of its caskets constituted 15.-4% and 14.7% of taxpayer's cash basis receipts.[8] Even if it were shown that taxpayer did not mark up the price of the caskets and relied for its profit on the price of the overall funeral, we would apply the familiar maxim that in tax matters the court will not exalt form over substance. The record clearly demonstrates that caskets are substantial income-producing factors in taxpayer's business.

Since taxpayer's caskets are plainly both merchandise and substantial income-producing factors, Treas.Reg. § 1.471–1 is applicable. The Commissioner takes the position that this conclusion requires full use of the accrual method. His argument is that whenever inventories are mandated by Treas.Reg. § 1.-471–1, the accrual method is required under Treas.Reg. § 1.446–1(c) (2) and that it is not open to the taxpayer to resist its use on the ground that some other method also clearly reflects income. The taxpayer contends that even if Treas.Reg. § 1.471–1 is applicable it is entitled to continue to use the cash method if it clearly reflects income. This position is not without some support.[9] However, in upholding the

---

7. Treas.Reg. § 1.471–1 requires only that the merchandise be "income producing." It does not say that it must contribute to income in a substantial amount.

8.

| Year | Cost of Caskets Purchased | Cash Basis Receipts | Caskets as a % of Receipts |
|---|---|---|---|
| 1961 | $17,074.59 | $121,102.12 | 14.1 |
| 1962 | 16,240.17 | 113,506.86 | 14.3 |
| 1963 | 20,052.83 | 129,898.72 | 15.4 |
| 1964 | 16,330.89 | 120,209.64 | 13.6 |
| 1965 | 17,883.39 | 121,574.92 | 14.7 |

9. The Tax Court, in a variety of contexts, has recognized that the presence of inventories does not necessarily mean that the cash basis does not clearly re-

Commissioner's determination that taxpayer's accounting method failed to reflect income clearly, the Tax Court rested its decision on a broader base than the Commissioner's argument. It found that there was potential distortion in income under taxpayer's accounting method attributable to his treatment of accounts receivable.

To rebut that contention, taxpayer's accountant prepared a schedule which purported to show that the disparity in gross income resulting from the use of the different methods was inconsequential [10] and testified that in this case it is immaterial whether the cash or accrual method is used. Even if we accept taxpayer's reconstruction of accrual method income for the years in question,[11] we cannot agree that the disparities between the accounting methods are negligible.

For the years in which deficiencies were assessed the differences in gross income were $2,094.80 and $4,009.76. In the three additional years for which taxpayer reconstructed accrual method income, the differences were $4,215.22, $3,906.92 and $817.46. The standard we apply is whether the taxpayer's method of accounting reflects his income with as much accuracy as standard methods of accounting permit.[12] In our view, this means that the taxpayer must demonstrate substantial identity of results between his method and the method selected by the Commissioner. This he has failed to do. The fact that over a five year period the difference in totals was less than two-tenths of one per cent, apart from being purely fortuitous, is immaterial. Federal taxation is keyed to a system of annual accounting. *See* Artnell Co. v. Commissioner, 400 F.2d 981, 983 (7th Cir. 1968); Whitaker v. Commissioner, 259 F.2d 379 (5th Cir. 1958).

The application of this rigorous standard may occasionally work a harsh result, as may be true here. However, it must be borne in mind that regardless of the accuracy of taxpayer's cash method in the past, there is no guarantee that the stability of sales, costs, collections and other factors which make for

---

flect income. *See, e. g.*, Ezo Products Co., 37 T.C. 385, 393 (1961); Estate of Howard T. Roe, 36 T.C. 939, 952 (1961); Michael Drazen, *supra*, at 1079; Stanford R. Brookshire, 31 T.C. 1157, 1166 (1959), *aff'd*, 273 F.2d 638 (4th Cir.), *cert. denied*, 363 U.S. 827, 80 S.Ct. 1597, 4 L.Ed.2d 1523 (1960); Theodore H. Beckman, 8 B.T.A. 830, 831 (1927); 2 J. Mertens, Law of Federal Income Taxation § 16.03, at 6 (Malone rev. ed. 1967); *contra* Harry Hartley, 23 T.C. 353, 358 (1954).

10.

| Year | Accrual | Cash |
|------|---------|------|
| 1961 | $120,284.66 | $121,102.12 |
| 1962 | 117,413.78 | 113,506.86 |
| 1963 | 127,803.92 | 129,898.72 |
| 1964 | 115,994.42 | 120,209.64 |
| 1965 | 125,584.68 | 121,574.92 |

---

11. Questions were raised at trial concerning taxpayer's reconstruction of accrual income, particularly with respect to its treatment of bad debts and receivables and the failure to adjust its figures for inventory but in light of our disposition of the case, we need not determine the validity of these calculations.

12. Caldwell v. Commissioner, 202 F.2d 112 (2d Cir. 1953); Peterson Produce Co. v. United States, 205 F.Supp. 229, 243 (W.D.Ark.1962), *aff'd*, 313 F.2d 609 (8th Cir. 1963); Boynton v. Pedrick, 136 F.Supp. 888, 889 (S.D.N.Y.1954), *aff'd*, 228 F.2d 745 (2d Cir. 1955), *cert. denied*, 351 U.S. 938, 76 S.Ct. 835, 100 L.Ed. 1465 (1956); *but see* Glenn v. Kentucky Color & Chem. Co., 186 F.2d 975 (6th Cir. 1951); Osterloh v. Lucas, 37 F.2d 277, 278 (9th Cir. 1930); Barker v. United States, 26 F.Supp. 1004 (Ct.Cl.1939).

that result will continue in the future. Hence, even if a taxpayer may avoid the imposition of the full accrual system, despite the presence of § 471 inventories, by showing that his method reflects income clearly, the standard it must satisfy is extremely high.

The decision of the Tax Court is affirmed.