**FRED H. McGRATH & SON, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 81 CIV 3942 (LBS).

United States District Court, S.D. New York.

July 1, 1982.

McCarthy, Fingar, Donovan, Glatthaar, Drazen & Smith, Martin Drazen, White Plains, N.Y., for plaintiff.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., William J. Brennan, Asst. U.S. Atty., New York City, for defendant.

## OPINION

SAND, District Judge.

Plaintiff seeks a refund of $75,495.00 in federal income taxes, plus interest of $19,-936.37. Both the plaintiff and the defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and then submitted a stipulation stating that the materials filed in support of their motions should instead be considered as a complete record for a trial on the merits of this case. The parties stipulated that they did not wish to call any witnesses or introduce any further materials at trial, and stated that the Court may draw any and all reasonable inferences from the record, permissible in a trial on the merits. After careful consideration of the stipulation and the parties' briefs, and after oral argument on the matter, this Court is of the opinion that the defendant is entitled to a judgment in this action.

The plaintiff, Fred H. McGrath & Son, Inc., is a New York corporation, which operates a funeral home and undertaking business. Since the date of its incorporation in 1955, in reporting its federal income taxes, the plaintiff has generally used the cash basis method of accounting, taking its inventory of caskets into account solely as an expense item in calculating its cost of operations for the year.

In 1977, the Internal Revenue Service ("IRS") began an audit of the plaintiff's federal income tax return for the tax year ending September 30, 1975. The IRS determined that, given the plaintiff's inventory of caskets, the plaintiff's accounting method did not clearly reflect income, and the Commissioner adjusted the plaintiff's return to reflect its income under the accrual method of accounting. This adjustment increased the plaintiff's income by $157,284 and increased the plaintiff's income taxes for that year by $75,495. The plaintiff paid this amount and then brought the present action.

The plaintiff's burden, in challenging the Commissioner's decision, is a heavy one, since the Commissioner's exercise of discretion in determining whether a taxpayer's accounting method clearly reflects income "must be upheld unless it is clearly unlawful." *RCA Corp. v. United States,* 664 F.2d 881, 886 (2d Cir. 1981). *Accord Thor Power Tool Co. v. Commissioner,* 439 U.S. 522, 532, 99 S.Ct. 773, 781, 58 L.Ed.2d 785 (1979). The Court agrees with the defendant that the Commissioner's determination in this action was not "clearly unlawful."

Before turning to the specific decision of the Commissioner in this case, it is helpful to have in mind the relevant provisions of the Internal Revenue Code ("the Code") and the pertinent Treasury Regulations. The plaintiff aptly notes the Code's provision that generally "[t]axable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." 26 U.S.C. § 446(a). However, the Code further provides that when a taxpayer's regular accounting method "does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income." 26 U.S.C. § 446(b). Section 471 of the Code authorizes the Commissioner to require inventories when, in his opinion, "the use of inventories is necessary in order clearly to deter-

mine the income of any taxpayer." 26 U.S.C. § 471.

These provisions are further amplified in two Treasury Regulations. Treasury Regulation § 1.471–1 provides that "[i]n order to reflect taxable income correctly, inventories . . . are necessary in *every* case in which the production, purchase or sale of merchandise is an income-producing factor." (Emphasis added). Treasury Regulation § 1.446(c)(2)(i) provides that when inventories are necessary, "the accrual method of accounting *must* be used with regard to purchases and sales unless otherwise authorized under subdivision (ii) of this subparagraph." (Emphasis added).

■ The Court agrees with the defendant's interpretation of the above-cited language that if caskets are "an income producing factor" in the plaintiff's business, Treasury Regulation § 1.471–1 requires the use of inventories, and Treasury Regulation § 1.446(c)(2)(i) requires the use of the accrual method of accounting, regardless of whether plaintiff's method clearly reflects its income. The plaintiff argues that even if caskets are an "income producing factor" in its business, the plaintiff may continue to use its method of accounting. This interpretation is belied by the use of the words "every" and "must" in the Regulations. The defendant's position is further strengthened by the Commissioner's conclusion in Revenue Ruling 69–537, 1969 C.B. 109, that where the taxpayer's business and accounting method were similar to those involved in the current case, since caskets were an income producing factor, the taxpayer had to use the accrual method of accounting. Such Revenue Rulings are entitled to great deference, and have been said to "have the force of legal precedents unless unreasonable or inconsistent with the provisions of the Internal Revenue Code." *Dunn v. United States,* 468 F.Supp. 991, 993 (S.D.N.Y.1979) (Weinfeld, J.).

■ For the reasons cited below, this Court is of the opinion that there is an adequate basis in law for the defendant's conclusion that caskets are an "income producing factor" in the plaintiff's business and hence its determination that the accru-

al method should be used in reporting income. Furthermore, the Court notes that even were the plaintiff's legal theories correct, there is, in any event, an adequate basis in law for the defendant's conclusion that the plaintiff's accounting method did not clearly reflect its income.

The plaintiff sells caskets in all of the funeral services it conducts except for the approximately 5% in which a body is shipped to the taxpayer from another part of the country. The plaintiff charges a 230% mark-up on 90% of the caskets it sells, such that the higher the cost of the casket sold, the greater the dollar increase of the mark-up. (McGrath Deposition 12–13; McGrath Aff. ¶ 6). By contrast, the plaintiff charges fixed fees for the other services it provides. Furthermore, the cost of the caskets purchased annually by the plaintiff averages approximately 16.7% of its total cash receipts. These facts indicate that caskets are income producing factors regardless of whether or not, as plaintiff stresses, its opening and closing inventories hardly varied. Furthermore, this case may be analogized to *Wilkinson-Beane, Inc. v. Commissioner,* 420 F.2d 352 (1st Cir. 1970), where the court concluded that caskets were "substantial income producing factors in taxpayer's business" at least in part because their annual cost averaged 14.5% of its total annual cash receipts. *Id.* at 355.

It should also be noted that in *Wilkinson-Beane,* the Court concluded that the plaintiff's accounting method did not clearly reflect its income where its reported income varied by only about $4,000 from the Commissioner's figure. The Court stated that "the taxpayer must demonstrate substantial identity of results between his method and the method selected by the Commissioner. . . . The fact that over a five year period the difference in totals was less than two-tenths of one percent, apart from being purely fortuitous, is immaterial." *Id.* at 356. In this case, for the tax years 1973 and 1975, the plaintiff's stated taxable income was $15,361 and $47,224 less than the Commissioner's figure respectively, and for 1974, 1976, and 1977, was greater than the Commissioner's figure by $22,162, $7,857, and $8,932 respectively. Defendant's Mem-

orandum of Law at 7, *citing* Items 10, 11 of Defendant's 3(g) Statement.

The plaintiff's contention that, for policy reasons, "the taxpayer's business was never *intended* to fall within the Commissioner's strict and technical reading of the Treasury Regulations" since there is not the potential for distortion of income, Plaintiff's Memorandum of Law at 19, is unconvincing. The plaintiff ignores the fact that the accrual method is at least partially designed to prevent a taxpayer for whom inventory is an income producing factor from using the cash basis method to manipulate income through strategic timing of its accounts receivable. This rationale justifies the defendant's scrutiny into whether the plaintiff's accounting method clearly reflects its income, an analysis which, it may be noted, does not turn on how long the plaintiff has been using its method. Indeed, the plaintiff has admitted that under the 1954 Code "the consistent use of an improper accounting method does not prevent the Commissioner from challenging the method in later years." Plaintiff's Memorandum of Law at 22.

For the foregoing reasons, the Court is of the opinion that there is an adequate basis in law for the Commissioner's conclusions that caskets were an "income producing factor" in the plaintiff's business and that the plaintiff's accounting method did not clearly reflect its income for tax purposes. Since the Commissioner did not act "clearly unlawfully," these decisions are affirmed.

We turn next to the plaintiff's contention that it is entitled to an adjustment of the taxable income generated by the change in accounting method, to be allocated over a ten year period. The plaintiff argues that the Revenue Procedures pertaining to adjustments apply only to situations in which a taxpayer *voluntarily* changes its accounting method, but that the plaintiff should be granted such an adjustment in this case as a matter of equity.

■ Without addressing the merits of the plaintiff's statements as to the coverage of the relevant Revenue Procedures, the Court notes the plaintiff's failure to follow the procedures outlined therein for obtaining adjustments. Revenue Procedure 70–27, 1970–2 C.B. 509, states that:

"[t]he request for application of the Revenue Procedure *shall* be made in a letter to the Commissioner of Internal Revenue.... The letter *shall* be accompanied by a completed Form 3115.... Pending completion of action by the National Office on the request for application of this Revenue Procedure, the District Director will suspend audit action on this particular issue." (Emphasis supplied).

*Accord* Revenue Procedure 80–51, 1980–2 C.B. 818. The plaintiff in this case only advised an IRS Appeals Officer of its desire to allocate the adjustment over a ten year period, and even though the Appeals Officer provided the plaintiff with a Form 3115 in 1978, the plaintiff has chosen never to fill it out and forward it to the IRS. Since the plaintiff has failed to comply with the prescribed administrative conditions, it is precluded from obtaining the relief it seeks. *See* 26 U.S.C. § 481(c); Treasury Regulation 1.481–5(a).

The Commissioner's determinations are, in all respects, affirmed.

Submit order on notice.