SURTRONICS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Surtronics, Inc. v. Commissioner
Docket No. 25389-82.
United States Tax Court
T.C. Memo 1985-277; 1985 Tax Ct. Memo LEXIS 353; 50 T.C.M. (CCH) 99; T.C.M. (RIA) 85277; June 11, 1985. *353 Petitioner electroplated switches and other component parts for manufacturers of electronic equipment, such as radios, televisions, and computers. Most of the electroplating was done with gold and silver, but occasionally non-precious metals were used. Accurate inventories of the metals used in the electroplating process were maintained, but for income tax purposes petitioner only used the inventories to determine the cost of goods sold. All other items of income and expense were reported on petitioner's books and on its tax returns on the cash basis. Respondent determined that petitioner's method of accounting did not clearly reflect income under sections 446 and 471 and recomputed petitioner's income using the accrual method of accounting. Held, metals used by petitioner in the electroplating process were merchandise held for sale and petitioner is required to maintain inventories and to use the accrual method of accounting. Held,further, petitioner has not demonstrated that there is substantial identity of results between its method of accounting and the method adopted by respondent, that its income as computed under its method is as accurate as standard methods *354 of accounting will permit, and that consequently its method does not clearly reflect its income. W. Gerald Thornton,David D. Dahl, for the petitioner. Eric B. Jorgensen, for the respondent. SHIELDS MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: *355 Respondent determined deficiencies in petitioner's Federal income taxes for the fiscal years 1979 and 1980 in the amounts of $166,706.95 and $38,081.19, respectively. The issue is whether petitioner's method of accounting clearly reflected its taxable income. FINDINGS OF FACT Some of the facts have been stipulated and are so found, the stipulation of facts being incorporated herein by reference. Petitioner, Surtronics, Inc., a North Carolina corporation, had its principal place of business in Raleigh at the time its petition was filed. Its income tax returns for the fiscal years ending on September 30, 1979 and September 30, 1980 were filed with the Internal Revenue Service Center at Memphis, Tennessee. Petitioner was organized in 1976 by William H. Wade, Jr. and Terry P. Smith III, to continue a business which they had been operating since 1965 as a partnership. The business consisted of electroplating certain components such as switches for radios, televisions, computers and other electronic equipment for several firms. Most of the plating was done with gold or silver, but occasionally a non-precious metal such as zinc, cadmium, nickel or chrome was used. *356 Petitioner's process consisted of (1) cleaning the object to be plated; (2) placing the object in a tank containing the plating metal in a chemical solution; (3) checking the object from time to time until the desired plating was obtained; and (4) rinsing, drying and repackaging the object for return to the customer. The thickness of the metal plating on the object would sometimes be as little as one ten-thousandth of an inch. Occasionally petitioner did a minimal amount of electropolishing where an object would simply be polished by placing it in a chemical solution without any metal plating. During 1979 and 1980 petitioner's business increased substantially due to an increase in the number of customers locating in the area. Stackpole Components Company, one of petitioner's largest customers, was acquired during this period. Petitioner did approximately $1,500,000 worth of electroplating for Stackpole during each year. Because of its high volume of business and the need to provide reliable service to its customers by avoiding problems with its suppliers of metals, petitioner attempted to maintain a 30 to 60 day inventory of all metals used in its process. Such metals were classified *357 as tangible personal property by the North Carolina Revenue Department for sales and use tax purposes. Electroplating was classified as a manufacturing industry by the same department. When gold or silver was used by petitioner in its electroplating process the cost of the metal represented approximately 75 percent of the price petitioner charged for the work. When non-precious metals were used, the cost of the metals represented only about five percent of the price charged by petitioner. Petitioner determined the price to be charged per unit from the cost of the metal that was consumed in the process. The following example illustrates how the unit price for electroplating one object with a precious metal was determined: Amount of Metal to be Used
.134 oz.
(Determined from the area to be
plated and the desired thickness
of the plating.)
Multiplied by the Base Price of the Metal
$7.00/oz.
(Determined from a price list
maintained by petitioner.)
Cost of metal needed to plate
$ .94 one unit (75% of total unit price)
Multiplied by 1.33 [1]
1.33 Equals the total unit price
$ 1.25 *358 The base price list of the metal was assembled by petitioner with information received from its customers, the news media, and other sources. The prices were competitive within the electroplating market and a customer could predetermine the cost of plating a unit by selecting the type and amount of metal to be used in the process. If the customer did not furnish specifications for the work to be done, petitioner's employees would determine the specifications by conferring with the customer's engineers. During the years 1978 through 1980 prices of precious metals constantly fluctuated but the overall result was a rapid and substantial increase. Because of such fluctuations petitioner had to adopt a surcharge to determine the price to be charged its customers. The surcharge was necessary in order to reflect any increase or decrease in the cost of the precious metal being consumed between the date a price was quoted to the customer and the date upon which the work was done. The surcharge was determined by ascertaining the percentage of increase or decrease in the market price of the metal between the date of the quotation and the price of such metal on the date it was *359 used in the electroplating. The quoted price would then be adjusted for such increase or decrease in order to arrive at the price to be paid by the customer. A copy of the surcharge computation was furnished by petitioner to the customer, together with copies of invoices showing the amount paid by petitioner for the metal used in the process. Since its incorporation, petitioner has maintained inventories of the various metals used in its operation. In the preparation of its income tax returns for all years including fiscal 1979 and 1980, these inventories were used by petitioner to determine the cost of goods sold. However, all other items of income and expense were reported on petitioner's income tax returns and on petitioner's books by use of the cash basis of accounting. In other words, sales and expenses were reported when actually received or paid even though most sales were made on credit and there were substantial accounts receivable and accounts payable outstanding at the end of each year. At the end of each year petitioner's accountant used a worksheet to record the accounts receivable, accounts payable and any other entries necessary to convert petitioner's *360 accounting records to the accrual basis of accounting. After being adjusted in this manner to the accrual basis of accounting, the records were used by petitioner to prepare financial statements for credit and other non-tax purposes. A comparison of petitioner's gross receipts for the fiscal years 1978 through 1982 as computed on the cash and accrual methods is set forth below: Taxable
Cash
Accrual
Percentage
Year Ended
Method
Method
Difference
Difference
09/30/78
$ 1,891,640
$ 1,855,437
$ (36,203)
(1.91%)
09/30/79
2,795,869
2,944,081
148,212 5.30% 09/30/80
4,588,745
4,651,516
92,771 2.04% 09/30/81
4,599,197
4,598,848
(349)
( .01%)
09/30/82
4,417,781
4,453,777
35,996 .81% TOTAL
$18,293,232
$18,503,659
$ 240,427 1.32% A comparison of petitioner's net income before taxes for the same years is as follows: Taxable
Cash
Accrual
Percentage
Year Ended
Method
Method
Difference
Difference
09/30/78
$ 249,467
$ 207,236
$ (42,231)
(16.93%)
09/30/79
304,792
437,229
132,437 43.45% 09/30/80
1,181,078
1,254,751
73,673 6.24% 09/30/81
1,056,871
1,062,427
5,556 .53% 09/30/82
565,158
594,400
29,242 5.17% TOTAL
$3,357,366
$3,556,043
$ 198,677 5.92% *361 The data set forth in the following schedule is taken from petitioner's accounting records. Fiscal Year
09/30/79
09/30/80
Total
Gross Receipts or Sales: Per Returns
$2,795,869
$4,558,745
Per Accrual Method
2,944,081
4,651,516
Difference
$ 148,212
$ 92,771
$240,983
Accounts Receivable
$ 399,416
$ 492,187
As a Percent of
Reported Gross Sales
14%
10%
Cost of Goods Sold (COGS)
Per Returns:
$1,853,537
$2,689,178
Cost of Metals: [2]
$1,477,414
$2,220,737
As a Percent of COGS
79%
82%
As a Percent of
Reported Gross Sales:
52%
48%
Beginning Inventory
$ 34,185
$ 59,170
Ending Inventory
59,170
$ 515,239
Change in Inventory
$ 24,985
$ 456,069
Net Income Before Taxes: Per Tax Return
$ 304,792
$1,181,078
Per Accrual Method
437,229
1,254,751
Difference
$ 132,437
$ 73,673
$206,110
The parties agree that petitioner acquired all the metals involved herein for use in its electroplating process and not for resale as such. In his notice of deficiency, respondent determined that the cash method of accounting as employed by petitioner *362 did not clearly reflect petitioner's income and recomputed the income on the accrual basis of accounting. At trial and on brief, petitioner contended that it is a service organization which is not required to use inventories and therefore is not required to use the accrual basis of accounting. OPINION For income tax purposes, the general rule with respect to a taxpayer's method of accounting is that his taxable income shall be computed using the method of accounting regularly used to keep his books and compute his income. Section 446(a).[3] However, section 446(b) provides that if the method of accounting used by a taxpayer does not clearly reflect his taxable income, respondent may compute such income by using a method which in the opinion of respondent does clearly reflect the taxpayer's income. The authority vested in respondent under section 446(b) is very broad and in matters of accounting he has wide latitude to change the method of accounting so as to clearly reflect income. See Thor Power Tool Co. v. Commissioner,439 U.S. 522, 532 (1979); Commissioner v. Hansen,360 U.S. 446, 467 (1959). *363 Furthermore, respondent's determination under section 446(b) is presumptively correct and must be upheld unless the taxpayer can prove that it is clearly erroneous or arbitrary. Lucas v. Kansas City Structural Street Co.,281 U.S. 264, 271 (1930); Brooks-Massey Dodge, Inc. v. Commissioner,60 T.C. 884, 891 (1973). Respondent's argument is as follows: (1) petitioner is engaged in a business in which the production, purchase or sale of merchandise is an income-producing factor within the meaning of section 471; (2) in such a business inventories are necessary under section 471 in order to clearly reflect taxable income; and (3) since inventories are necessary, the full use of the accrual method of accounting is mandatory under section 446. Petitioner's principal argument is: (1) it is engaged in a service business in which the production, purchase or sale of merchandise is not an income-producing *364 factor; (2) therefore it is not required to keep inventories under section 471; and (3) since inventories are not required under section 471 its use of the accrual method of accounting is not mandatory under section 446. For the reasons hereinafter set out, we agree with respondent that petitioner is required to use the accrual method of accounting. During fiscal years 1979 and 1980, almost all of the business carried on by petitioner was accomplished with the following steps: (a) petitioner purchased metals, some of which were gold and silver; (b) petitioner inseparably plated the metals to switches and other component parts of electronic equipment owned by different manufacturers; (c) after the metals were plated to the components, petitioner returned the components to their owners; and (d) for the electroplating done to the component, petitioner billed, and the owner of the component paid, an agreed amount. The agreed amount paid by the component owner to petitioner was equal to the approximate cost of the metal applied to the component by petitioner plus a service charge. The service charge was approximately 25 percent of the total charge where gold or silver was *365 used and 95 percent of the total charge where a non-precious metal was used. When viewed in the above manner, it is apparent that petitioner purchase the plating metal from a supplier and sold it to the owner of the component at about the cost of the metal. When viewed in this manner it is equally apparent that this case is analogous to, if not indistinguishable from, the factual situation involved in Wilkinson-Beane, Inc. v. Commissioner,420 F.2d 352, 354 (1st Cir. 1970), affg. a Memorandum Opinion of this Court. There the Court of Appeals held that caskets were merchandise held for sale by a funeral director even assuming that they were sold at cost and as part of his overall funeral service. A similar conclusion was reached by the Eleventh Circuit with respect to newspapers which were sold at or less than the cost of the paper and ink used in their production. Knight-Ridder Newspapers, Inc. v. United States,743 F.2d 781 (11th Cir. 1984). [4]
*366 In view of the foregoing, we conclude that the plating metals constituted merchandise the purchase and sale of which was an income producing factor to petitioner and that petitioner was required under section 471 and its regulations to maintain inventories of such metals. Furthermore, we also conclude that since petitioner was required to maintain inventories, petitioner must use the accrual method of accounting in order to clearly reflect its income. Section 446; section 1.446-1(c)(2)(i), Income Tax Regs.; Niles Bement Pond Co. v. United States,281 U.S. 357, 360 (1930); Iverson's Estate v. Commissioner,255 F.2d 1, 2-5 (9th Cir. 1958), affg. 27 T.C. 786 (1957); Caldwell v. Commissioner,202 F.2d 112, 114 (2d Cir. 1953), affg. a Memorandum Opinion of this Court; Ezo Products Co. v. Commissioner,37 T.C. 385, 392 (1961); Record Wide Distributors, Inc. v. Commissioner,682 F.2d 204, 206 (8th Cir. 1982), affg. a Memorandum Opinion of this Court. In reaching the above conclusion we have carefully considered but cannot adopt petitioner's additional *367 contention that its accounting method should be approved in this case because such method is in accord with generally accepted accounting principles, has been consistently applied by petitioner, and does not result in a major distortion of income. We agree that the method has been consistently applied by petitioner but the method is not in accord with one of the basic principles of accounting which is that to the extent possible the income of a particular accounting period is to be matched with the expenses and costs incurred during the same period. We have found that under petitioner's method of accounting, the cost of the metals involved in sales totaling $399,416 in 1979 and $492,187 in 1980 were deducted in those years but the sales were not reported until the accounts receivable representing the sales were subsequently collected. This not only constitutes a violation of the matching principle but it also results in a distortion of income on an annual basis. See Artnell Co. v. Commissioner,400 F.2d 981, 983 (7th Cir. 1968); Whitaker v. Commissioner,259 F.2d 379 (5th Cir. 1958); Knight-Ridder Newspaper, Inc. v. United States,supra. *368 Furthermore, petitioner's cash method of accounting does not comply with respondent's regulations. As we have pointed out hereinbefore, under regulations issued with respect to section 446 the accrual basis of accounting is the proper method to be used by petitioner under the regulations of section 471 because the purchase and sale by petitioner of the plating metals is an income-producing factor. We also cannot agree with petitioner's contention that there was no major distortion of income by its use of the cash method of accounting. This is true even though as pointed out by petitioner the difference in the total gross receipts for the years 1978 through 1982 as computed on its cash basic was only 1.32 percent less than the total gross receipts for the same period as computed on the accrual basis. When stated as a percentage, the difference appears to be insignificant; but the total gross receipts for the five year period was in excess of $18,000,000 and the 1.32 percent of difference is over $240,000, a significant distortion. Petitioner's total net income before taxes for the same period was over $3,300,000 and the difference between the two methods is only 5.92 *369 percent but the small percentage difference amounts to more than $198,000. With the use of the accrual method of accounting the gross receipts for 1979 and 1980 were increased by $148,212 and $92,771, respectively, for a total increase of $240,983. With the use of the accrual method, the net income also increased substantially in each year, i.e., $132,437 in 1979 and $73,673 in 1980, for a total increase of $206,110. These increases are very significant when compared with the differences in gross receipts of only $2,094 in one year and $4,009 in the other year which were considered to be sufficient to require the change in accounting by the Court of Appeals in Wilkinson-Beane, Inc. v. Commissioner,supra.
Finally, petitioner contends that its method of accounting should be approved because it clearly reflected petitioner's income when consistently applied over a period of time and the record contains no evidence that its accounting books were not fairly and honestly kept. In support of this contention, petitioner relies upon the opinion of the Ninth Circuit in Osterloh v. Lucas,37 F.2d 277 (9th Cir. 1930). We believe, however, that petitioner's *370 reliance upon this opinion is not well founded because the opinion was issued long before the promulgation of regulations under sections 446 and 471 and because the "fair and honest" standard laid down therein appears to have been discredited even in the Ninth Circuit. Cf. Herberger v. Commissioner,195 F.2d 293 (9th Cir. 1952), cert. denied 344 U.S. 820 (1952). See also Caldwell v. Commissioner,202 F.2d 112, 114 (2d Cir. 1953), affg. a Memorandum Opinion of this Court, and Boynton v. Pedrick,136 F.Supp. 888, 889 (S.D. N.Y. 1954), affd. 228 F.2d 745 (2d Cir. 1955), cert. denied 351 U.S. 938 (1956). In any event, the more recently used, and in our opinion the more acceptable, test for determining whether or not a particular method of accounting clearly reflects income is a determination of whether or not the questionable method reflects income with as much accuracy as standard methods of accounting will permit. See Caldwell v. Commissioner,supra at 114; Wilkinson-Beane, Inc. v. Commissioner,supra at 356; *371 Childers Distributing Co., Inc. v. Commissioner,T.C.. Memo. 1983-237. In other words, to prevail upon this point petitioner would have to "demonstrate substantial identity of results between his method and the method selected by the Commissioner." Wilkinson-Beane, Inc. v. Commissioner,supra at 356. Petitioner has failed to do this because as indicated hereinbefore the results of the two methods of accounting are substantially different when considered over a five year period or on an annual basis. With respect to the difference on an annual basis see Caldwell v. Commissioner,supra at 114, where it is stated: The use of inventories in computing income results in stating the expenses of a year's operations in terms of the cost of the goods actually sold during that year. Thus the profit from these operations will be stated accurately only if the income from all sales made during the year is taken into consideration. This requires use of the accrual method of determining income, since the cash receipts method obviously does *372 not reflect the actual sales made during the year where, as in the present case, a substantial part of these sales * * * is made on credit. In view of all the foregoing, we conclude that petitioner has failed to demonstrate that its method of accounting clearly reflects income and that it is not required to use the accrual method of accounting. Decision will be entered for respondent.
Footnotes
1. Since the cost of precious metal was 75 percent of the total cost per unit, working backwards, petitioner determined the total cost per unit by multiplying the predetermined cost of the metal by 1.33. A similar method was used to compute the cost of plating a unit with non-precious metals.↩
2. Cost of goods sold per return less wages and salaries charged thereto.↩
3. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise provided.↩
4. See also Fred H. McGrath & Son, Inc. v. United States,549 F. Supp. 491 (S.D. N.Y. 1982) (funeral service); Rev. Rul. 74-2791974-1 C.B. 110 (optometrist who maintains a supply of eyeglass frames); Rev. Rul. 73-485, 1973-2 C.B. 150↩ (company that fits handicapped persons with artificial limbs and orthopedic braces).