T.C. Memo. 2000-114


UNITED STATES TAX COURT


VON EUW & L.J. NUNES TRUCKING, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17599-97.                    Filed March 31, 2000.


<u>Lawrence T. Ullmann</u>, for petitioner.

<u>Peter C. Rock</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined a deficiency of

$111,114 in petitioner's Federal income tax for the taxable year

ending March 31, 1995 (1994 taxable year).  The issue for

decision is whether respondent abused his discretion by requiring

petitioner to change its method of accounting from the cash

receipts and disbursements method (cash method) to the accrual method.[1]

### FINDINGS OF FACT

The parties submitted this case fully stipulated pursuant to Rule 122.[2]  The stipulation of facts and the attached exhibits are incorporated herein by reference.  At the time the petition was filed, petitioner's principal place of business was in Fremont, California.

Petitioner, a California corporation, acquires and transports sand and gravel for its customers, various contractors and developers operating in Northern and Central California.[3]  Petitioner's customers use the sand and gravel to construct foundations for streets, houses, and buildings (construction projects).  Most of petitioner's customers depend on petitioner to both acquire and transport the sand and gravel from storage sites to the customers' construction sites.  Some of petitioner's customers own or acquire the sand and gravel necessary to complete their construction projects without petitioner's

---

[1]  In the notice of deficiency, respondent reduced petitioner's depreciation, truck, and advertising & promotion deductions by $28,027, which petitioner does not contest in its petition.

[2]  All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3]  The phrase "sand and gravel" refers to both "sand and gravel" and "sand or gravel".

assistance.   These customers hire petitioner only for its transportation services.[4]

Usually, a customer contacts petitioner to order sand and gravel (measured by weight in tons) 1 day before the sand and gravel are needed at the construction site (the order date).  On the order date, petitioner informs the customer of petitioner's total charge for acquiring and transporting the sand and gravel (contract amount).  Petitioner calculates the contract amount by multiplying petitioner's charge for acquiring and transporting 1 ton of sand and gravel times the number of tons of sand and gravel ordered by the customer.  Petitioner's charge for acquiring and transporting 1 ton of sand and gravel consists of four amounts:  (1) Petitioner's costs in acquiring the sand and gravel, (2) petitioner's profit for acquiring the sand and gravel (approximately 20 to 25 percent of petitioner's costs in acquiring the sand and gravel), (3) petitioner's costs in transporting the sand and gravel from the storage site to the construction site (and petitioner's related profit for transporting the sand and gravel), and (4) a sales tax levied on amounts (1) through (3).

Petitioner, however, does not provide the customer an itemized description of the separate amounts constituting the

---

[4]   The record does not reflect what revenues and expenses relate to customers using petitioner solely for transportation services.

contract amount. If a customer requests only that petitioner transport the sand and gravel, petitioner charges the customer petitioner's costs for transporting the sand and gravel and petitioner's related profit for transporting the sand and gravel.

Petitioner acquires the sand and gravel from various suppliers. During petitioner's 1994 taxable year, 20 different entities (20 suppliers) provided petitioner with 60 percent (evaluated by weight in tons) of its sand and gravel needs, while the Unimin Corp. (Unimin) supplied petitioner with the remaining 40 percent.

Unimin processes and sells a high grade of sand used primarily in the production of wine bottles. Processing this high grade of sand produces a byproduct consisting of water and a lower grade of sand, known as Byron sand. After the water is removed from the byproduct, the Byron sand can be used by petitioner's customers. Because petitioner must provide and maintain all the equipment and personnel necessary to filter, gather, and remove the Byron sand from Unimin's processing plant, Unimin charges petitioner a lower amount than what the 20 suppliers charge for the same grade of sand. When petitioner computes the cost to acquire 1 ton of the Byron sand, petitioner includes its costs in filtering, gathering, and removing the Byron sand from Unimin's processing plant as well as the amount that Unimin charges petitioner for the Byron sand.

Petitioner owns 20 hauling trucks which it uses to transport the sand and gravel. If petitioner's customers order amounts of sand and gravel exceeding petitioner's transportation capabilities, petitioner hires third parties to meet customer demand.

On the delivery date, petitioner's employees travel to the supplier's storage site, load the sand and gravel purchased onto petitioner's trucks, and transport the sand and gravel to the customer's construction site.[5] As to the Byron sand, once petitioner's employees load it onto petitioner's trucks and Unimin creates a "weighmaster certificate", Unimin considers the Byron sand to be petitioner's property. Because petitioner acquires and delivers the sand and gravel to its customers during the same business day, petitioner does not possess any sand and gravel at the beginning or end of its business day.

On petitioner's 1994 Federal corporate income tax return (1994 tax return), petitioner described its business activity as "sales" and its product as "construction materials". Petitioner maintained its books and records on the accrual method of accounting and reported its income for Federal tax purposes on the cash method. On its 1994 tax return, petitioner reported gross receipts of $3,483,206 and cost of goods sold of

---

[5] Petitioner's employees perform similar tasks for customers who only request petitioner to transport (and not acquire) sand and gravel.

$1,867,497. In computing its cost of goods sold, petitioner reported $1,080,774 of "purchases", $786,723 of "cost of labor", and no beginning or ending inventories. In addition to its cost of goods sold, petitioner separately deducted its expenses related to the filtering, gathering, and removing of the Byron sand at the Unimin processing plant.

As of March 31, 1995, petitioner had accounts receivable of $426,389 and accounts payable of $143,846.

In the notice of deficiency, respondent determined that petitioner's use of the cash method of accounting did not clearly reflect income. Respondent, therefore, changed petitioner's method of accounting to the accrual method. Further, with regard to the change in accounting method and petitioner's concessions, respondent made a section 481(a) adjustment and determined a deficiency of $111,114 in petitioner's tax liability for its 1994 taxable year.

OPINION

The principal issue for decision is whether respondent abused his discretion by requiring petitioner to change from the cash method to the accrual method of accounting. Subsumed in this issue is the question of whether petitioner should be required to use inventories for tax purposes.

Under section 446,[6] the Commissioner has broad powers to determine whether an accounting method used by a taxpayer clearly reflects income.  See Commissioner v. Hansen, 360 U.S. 446, 467 (1959); Ansley-Sheppard-Burgess Co. v. Commissioner, 104 T.C. 367, 370 (1995).  Courts do not interfere with the Commissioner's determination under section 446 unless it is clearly unlawful. See Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532 (1979); Cole v. Commissioner, 586 F.2d 747, 749 (9th Cir. 1978), affg. 64 T.C. 1091 (1975); Ansley-Sheppard-Burgess Co., supra at 370.

Whether respondent abused his discretion is a question of

---

[6]  Sec. 446 provides in pertinent part:

    (a) General rule.--Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

    (b) Exceptions.--If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income.

    (c) Permissible methods.--Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting--

        (1) the cash receipts and disbursements method;

        (2) an accrual method;

        (3) any other method permitted by this chapter; or

        (4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary.

fact. See <u>Ansley-Sheppard-Burgess Co. v. Commissioner</u>, <u>supra</u> at 371; <u>Ford Motor Co. v. Commissioner</u>, 102 T.C. 87, 91-92, affd. 71 F.3d 209 (6th Cir. 1995). The reviewing court's task is not to determine whether, in its own opinion, the taxpayer's method of accounting clearly reflects income but to determine whether there is an adequate basis in law for the Commissioner's conclusion that it does not. See <u>Ansley-Sheppard-Burgess Co. v. Commissioner</u>, <u>supra</u> at 371. Consequently, to prevail, a taxpayer must prove that the Commissioner's determination is arbitrary, capricious, or without sound basis in fact or law. See <u>Ansley-Sheppard-Burgess Co. v. Commissioner</u>, <u>supra</u> at 371; <u>Ford Motor Co.</u>, <u>supra</u> at 92.

To resolve this dispute, we consider sections 446 and 471 and the regulations thereunder. Under section 446(a), a taxpayer computes taxable income based on the method of accounting utilized by the taxpayer in keeping its books. Section 446(c) describes the various accounting methods that a taxpayer may use in computing taxable income, including the cash and accrual methods.

Section 1.446-1(c)(2)(i), Income Tax Regs., provides that a taxpayer who is required to use inventories must also use the accrual method of accounting with regard to purchases and sales. Under section 471 and section 1.471-1, Income Tax Regs., a taxpayer must account for inventories if the production, purchase, or sale of merchandise is an income-producing factor in

the taxpayer's business and the taxpayer has acquired title to the merchandise.

We consider the facts and circumstances of each case in deciding whether material is merchandise that is an income-producing factor. See Honeywell, Inc. v. Commissioner, T.C. Memo. 1992-453, affd. without published opinion 27 F.3d 571 (8th Cir. 1994); Wilkinson-Beane, Inc. v. Commissioner, T.C. Memo. 1969-79, affd. 420 F.2d 352 (1st Cir. 1970). Although not specifically defined in the Internal Revenue Code or the regulations, courts have ruled that "merchandise", as used in section 1.471-1, Income Tax Regs., is an item acquired and held for sale. See, e.g., Wilkinson-Beane, Inc. v. Commissioner, supra.

Respondent contends that, because the sand and gravel is merchandise which is an income-producing factor in petitioner's business, petitioner must account for inventories and report its taxable income under the accrual method of accounting.

Petitioner broadly argues that it does not have to account for inventories under section 471 and section 1.471-1, Income Tax Regs., because (1) its business consists of "procuring and delivering * * * not acquiring and holding sand and gravel for sale to customers"; therefore, the sand and gravel should not be considered merchandise, and (2) even if the sand and gravel is considered merchandise, the procurement of the sand and gravel is

not an income-producing factor in petitioner's business.

Petitioner makes several arguments regarding why the sand and gravel should not be considered merchandise (i.e., items acquired and held for sale). On brief, petitioner positions itself as a service provider rather than as a seller of goods. Petitioner argues that to perform its primary business activity of delivering sand and gravel, petitioner merely accommodates its customers by also procuring sand and gravel. Further, petitioner asserts that, because it does not have any sand and gravel on hand at the beginning or end of the business day (due to the fact that on the same day it procures and delivers the exact amount of sand and gravel requested by its customers), it does not hold the sand and gravel for sale. Petitioner also argues that it does not mark up the cost of the sand and gravel and that "it makes the same profit whether it procures and delivers the requested [sand and gravel], or simply delivers [the] sand and gravel which the [customer] already owns or has purchased separately".[7]

We reject petitioner's contentions. When petitioner transports the sand and gravel that a customer already owns or has acquired, petitioner does not realize the profit associated with acquiring sand and gravel for a customer. Based on the

---

[7] Petitioner argues that because it designates the profit it earns on the "procurement" of sand and gravel as a separate element of its charge for acquiring and transporting 1 ton of sand and gravel, petitioner does not mark up the sand and gravel.

record, petitioner generates more profits if it both acquires and transports sand and gravel for its customer rather than solely acting as a transporter. Further, although not labeled by petitioner as a markup in its business records, petitioner's profit for acquiring the sand and gravel is nevertheless a markup since, in substance, the profit is based on a percentage of the underlying cost of the sand and gravel. Furthermore, petitioner, on its tax return, listed its business activity as the selling of construction materials.

In RACMP Enters., Inc. v. Commissioner, 114 T.C. ___ (2000), we recently held that respondent abused his discretion in placing a construction contractor on the accrual method for Federal income tax purposes. In that case, we concluded that the material provided by the contractor to its customer, pursuant to a construction contract for concrete foundations, driveways, and walkways, was not merchandise within the meaning of section 1.471-1, Income Tax Regs. See id. In reaching that conclusion, we viewed the construction contract as a service contract, finding that the materials were indispensable to and inseparable from the provision of that service and that the materials lost their separate identity during the construction activity. See id.; see also Osteopathic Med. Oncology & Hematology, P.C. v. Commissioner, 113 T.C. 376 (1999) (wherein drugs used as part of chemotherapy treatments were not considered merchandise because

their use was an indispensable and inseparable part of the rendering of services).

This is not such a case. Petitioner primarily sells a product, the sand and gravel, and incidentally provides a service, the transportation of the sand and gravel. Because petitioner can generate profits from solely transporting the sand and gravel, we do not view the sand and gravel as indispensable to and inseparable from the provision of a service.[8] Further, because petitioner does not consume, alter, or add to the sand and gravel, petitioner does not cause the sand and gravel to lose its separate identity. As the evidence shows that petitioner is a seller of sand and gravel, we conclude that the sand and gravel is merchandise.

Petitioner additionally argues that even if we conclude that the sand and gravel is merchandise, petitioner does not have to maintain inventories because the sand and gravel is not an income-producing factor in petitioner's business. In evaluating whether merchandise is an income-producing factor in a taxpayer's business, we must compare the cost of the merchandise to the taxpayer's gross receipts computed under the cash method of

---

[8] With regard to revenues and expenses generated as a result of customers requesting only transportation services, petitioner has not argued in the alternative that they should be placed on a hybrid method of accounting. In any respect, petitioner has not presented any evidence with regard to those revenues and expenses, and therefore it cannot meet its burden of proof.

accounting.  See <u>Wilkinson-Beane, Inc. v. Commissioner</u>, <u>supra</u>.
In <u>Wilkinson-Beane, Inc.</u>, we held that merchandise, the cost of
which (in different taxable years) constituted 14.7 percent and
15.4 percent of the taxpayer's gross receipts, was an income-
producing factor in the taxpayer's business.  See also <u>Knight-
Ridder Newspapers, Inc. v. United States</u>, 743 F.2d 781, 791 (11th
Cir. 1984) (wherein newspapers, the cost of which constituted
17.6 percent of the taxpayer's total revenues, were considered an
income-producing factor).

For its 1994 taxable year, petitioner reported cost of goods
sold in the amount of $1,867,497.  Petitioner argues that
$786,723 of the $1,867,497 amount relates to petitioner's
transportation activities, thereby leaving $1,080,774 for the
cost associated with petitioner's acquisition of the sand and
gravel.  Assuming arguendo that petitioner's figures are correct,
because the cost of the sand and gravel constitutes at least 31
percent of petitioner's gross receipts ($1,080,774 ÷ $3,483,206),
we conclude that the sand and gravel is an income-producing
factor in petitioner's business.[9]

On brief, petitioner does not address whether it acquires

---

[9]  Petitioner does not include in cost of goods sold the
costs involved in filtering, gathering, and removing the Byron
sand from Unimin's processing plant.  These costs would
significantly increase the cost of goods sold and the percentage
that cost of goods sold would constitute of petitioner's gross
receipts.

title to the sand and gravel. Petitioner and respondent stipulate that after petitioner loads the Byron sand onto its trucks for delivery and Unimin creates a "weighmaster certificate", Unimin considers the Byron sand to be petitioner's property. We interpret that stipulation to mean that title to the Byron sand passes from Unimin to petitioner at that point in time.

The record does not reflect whether petitioner acquires title to the sand and gravel that petitioner purchases from the 20 suppliers. In Addison Distrib., Inc., T.C. Memo. 1998-289, we described a taxpayer as both a "buyer pursuant to its contract with [a] vendor or subcontractor and [as a] seller pursuant to its contract with its customers". Citing California Commercial Code section 2106 (West 1964), which provides that "a 'sale' consists in the passing of title from the seller to the buyer for a price", we concluded that the taxpayer had acquired title to goods which were purchased from the vendor or subcontractor for eventual sale to the taxpayer's customers. See id. In light of California Commercial Code section 2106, our characterization of petitioner as a seller of sand and gravel, and petitioner's failure to dispute the transfer of title, we see no reason to treat petitioner's contractual and legal relationship with the 20 suppliers differently from petitioner's business dealings with Unimin. We therefore conclude that petitioner acquires title to

the sand and gravel.

Because we hold that the sand and gravel is merchandise which is an income-producing factor in petitioner's business and that petitioner acquires title to the sand and gravel, petitioner must maintain inventories. Pursuant to section 1.446-1(c)(2)(i), Income Tax Regs., petitioner would therefore have to report its taxable income on the accrual method of accounting unless an exception applies. A taxpayer demonstrating a substantial identity of results between the taxpayer's method of accounting and the method of accounting selected by the Commissioner may compute taxable income under its method of accounting. See Wilkinson-Beane, Inc. v. Commissioner, 420 F.2d 352, 356 (1st Cir. 1970), affg. T.C. Memo. 1969-79. On brief, petitioner concedes that it does not meet the substantial identity of results test. We, therefore, hold that respondent did not abuse his discretion under section 446 when respondent required petitioner to compute its taxable income based on the accrual method of accounting.

In reaching all our holdings herein, we have considered all arguments made by the parties, and, to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.