**PETERSON PRODUCE COMPANY, an Arkansas Corporation, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 17158.

United States Court of Appeals Eighth Circuit.

Feb. 21, 1963.

W. H. Enfield of Little & Enfield, Bentonville, Ark., for appellant.

Richard J. Heiman, Attorney, Dept. of Justice, Washington, 25, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Washington, D. C., Lee A. Jackson, Harry Baum, Richard J. Heiman, Attorneys,

Dept. of Justice, Washington, D. C., and Charles M. Conway, U. S. Atty., and Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., on the brief, for appellee.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

VOGEL, Circuit Judge.

Appellant-taxpayer, Peterson Produce Company, brought this action to recover income tax paid for the taxable year ending August 31, 1956. The appellant claimed refund by virtue of an alleged net operating loss carry-back to 1956 from its taxable year ended March 31, 1959.

The appellant was incorporated in 1947 and is engaged in the feed and hatchery business. Between 1947 and September, 1958, a substantial part of the taxpayer's business consisted of the sale of chicks, feed, and other poultry supplies to growers and participation by it in raising and selling the chickens. In the years immediately following the incorporation appellant operated by taking chattel mortgages on the grower's flocks as security for such supplies. This method was gradually discontinued and by about 1956 very few chattel mortgages were being taken. Instead appellant established contractual relationships with the growers which were basically profit-sharing plans in which the grower's share depended heavily upon the amount of feed used per pound of meat produced. Under these arrangements the taxpayer had no direct authority over the growers, although it did maintain field men who called upon the growers and who did exercise some persuasive control over them.

Appellant also began a small breeding farm operation in 1946. This was later separately incorporated through a tax-free spin-off under the name Peterson Breeding Farm, Inc.

Testimony indicated that it became increasingly difficult for the taxpayer to maintain the chick raising part of the business on a profitable scale. The growers were no longer willing to take the risk of raising the chicks on their own. As a result appellant entered a new phase of the business in September, 1958, when there was established the broiler division. It began broiler raising by hiring the growers to raise taxpayer's broilers on a labor and lease agreement. Under such a system the taxpayer was able to retain complete control over the care, feeding and time for marketing of the chicks that were supplied. Under the new arrangement the taxpayer, rather than the growers, was considered the owner of the chicks. These non-profit-sharing lease contracts largely supplanted the former profit-sharing plans and what had once been essentially a debtor-creditor relationship now became what could more accurately be termed a master-servant arrangement.

Prior to September 1, 1958, the taxpayer had reported income from the overall operations using the accrual method of accounting. It does contend, however, that the breeding operation had been reported on a cash basis. Following the development of the broiler division, the appellant continued to report income from the feed and hatchery divisions on the accrual method, but reported the income from the broiler division on a cash basis. The feed and chicks "sold" to the broiler division by the feed and hatchery departments were transferred on the latter's books at cost and as accounts receivable. The broiler division, by using the cash method, would deduct as a cost item at the close of the taxable year the amounts expended in processing the chicks unsold at the time the return was filed.

Daily transactions were recorded in the original journals and at the end of each month were posted in the single general ledger wherein it was possible to separate the accounts of the broiler division. At all times the appellant maintained a single bank account for all three divisions. Administrative costs of the various divisions were distributed among the three divisions on a *pro rata* scale.

Operating under the above-described dual accounting system, the taxpayer claimed the carry-back loss to the year 1956. This loss was denied by the Commissioner. In resisting taxpayer's suit to recover, the government contends that the taxpayer was not entitled to use the cash method of accounting without obtaining the prior permission of the Commissioner because the broiler division did not constitute a new, distinct and separate business so as to allow a departure from the accounting method thus far consistently employed. It was further felt that such a departure could easily be used to distort income. By disallowing the cash method of accounting in the broiler division, the latter was required to carry the chicks and feed acquired from the feed and hatchery division as a closing inventory rather than as a cash expenditure, thus resulting in the deficiency in question.

In suing for recovery of the alleged deficiency, the taxpayer contended and does contend here that: The broiler division was a new, separate and distinct business; that its status as a farmer was material to the issue; that there was no attempt to change the method of accounting insofar as it had always reported its income from the breeding farm on a cash basis; that it kept complete and separable books and records for the broiler division; and, finally, that there was no distortion of income through the use of the dual system of accounting.

■ The District Court, in its opinion published at 205 F.Supp. 229, held that: It was immaterial whether or not taxpayer be considered a farmer since this would not affect its right to change its accounting system; that the over-all operations of taxpayer did not undergo a significant change; that all three departments were too interdependent and well-integrated to be considered separate and distinct; that there was not a sufficient separation of the books and records; that regardless of how the above issues were resolved, there was not a clear reflection of income for the year in question through the method employed by the taxpayer; and finally there existed the possibility of a transfer of a large quantity of feed and chicks toward the end of a profitable year, thus decreasing the closing inventory of the feed and hatchery divisions and increasing the cash deductions of the broiler department. Such a procedure could be employed to distort the true net income from the over-all operations.

We have carefully examined the record. The inescapable conclusion must be that there were involved questions of fact and that the District Court's findings were well supported and manifestly correct. While the court below did not consider the question raised here as to the consistency of the cash method now employed by the broiler division with that of the breeding farm operation, we cannot see how that additional contention aids the taxpayer. Initially, nothing appears in the record to substantiate the contention that the breeding farm had always operated on a cash basis. But assuming, arguendo, that the breeding farm had consistently operated on the cash method, there is nevertheless nothing to support a proposition that the broiler division was more closely related to the breeding farm than to the feed and hatchery departments. Certainly, the broiler division was an obvious outgrowth of the former feed and hatchery relationship with the growers, and the "new" broiler division did not have any more connection with the breeding farm than the prior arrangements had had.

We can see no value in further reiterating or attempting to enlarge upon the trial court's carefully considered opinion covering taxpayer's other contentions and we affirm on the basis thereof.

■■ Finally, the taxpayer contends in the alternative that the case should be sent back to the District Court for recalculation of the deficiency. It is stated that the deficiency was arrived at by the use of the cost of the inventory and that the market value should have been used since the latter was lower. The appellant did not raise this point below and accordingly it would, ordinarily, be

612

improper for this court to give primary consideration thereto. See Helvering v. Rubinstein, 8 Cir., 1942, 124 F.2d 969, 972–973. Nevertheless, while it is true that the appellant had regularly used the lower of cost or market value in calculating its inventories, we can find no indication in the record that the market value was below cost. Additionally, the figures used by the government in computing the closing inventory were those submitted by taxpayer's accountant and he calculated such figures at cost, the basis upon which the items were transferred from the feed and hatchery divisions. We can see no merit in appellant's alternative prayer for relief.

Affirmed.