**AMERICAN FLETCHER CORPORATION, Plaintiff–Appellant,**

**v.**

**UNITED STATES of America, Defendant–Appellee.**

**Nos. 86–2999, 86–3000.**

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1987.

Decided Oct. 29, 1987.

Joe C. Emerson, Baker & Daniels, Indianapolis, Ind., for plaintiff-appellant.

Francis M. Allegra, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before CUMMINGS and CUDAHY, Circuit Judges, and GRANT, Senior District Judge.[*]

CUMMINGS, Circuit Judge.

These appeals are from two judgments in favor of the United States in refund suits brought by plaintiff. In both cases, much smaller refunds were allowed than sought by plaintiff, thus causing it to appeal. The only question for us is whether the district judge correctly held that the Commissioner of Internal Revenue did not abuse his discretion under Section 446(b) of the Internal Revenue Code of 1954 by requiring taxpayer's subsidiary, Shopper's Charge Service, Inc. (SCS), to adopt the accrual method for income tax accounting. We affirm.

## I.

Section 446(b) provides that if the method of accounting used by taxpayer "does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary [of the Treasury], does clearly reflect income." In turn, Section 446(c) provides that subject to the foregoing subsection (b), a taxpayer may compute taxable income under, *inter alia*, the cash receipts and disbursements method or an accrual method.

Plaintiff's subsidiary, SCS, was a credit card charge account service. During 1973 and 1974, the taxable years in question, SCS used the accrual method of accounting in recording discount and financial income on its books. Its financial statements for those years were certified by Coopers & Lybrand, the taxpayer's public accounting firm, as being "in conformity with generally accepted accounting principles applied on a consistent basis."

But in calculating SCS's income or loss for purposes of filing its federal income tax returns, it adjusted the figures contained on its financials to convert its book accrual accounting method into a tax cash accounting method. This conversion was made to provide a lower taxable income. On the income side, SCS adjusted its merchant discount income by taking a weighted average of the discount percentages which had been applied to all its receivables in that taxable year and applying that percentage to its year-end receivable balance. The resulting amount was then subtracted from the merchant discount income figure derived under the accrual method. Further, taxpayer adjusted its finance income by subtracting therefrom all finance income accrued during December and half of the finance income accrued during November, assuming for this purpose that such amounts were uncollected at year's end. The latter assumption was based on statistics and the opinion of SCS management. In making both these adjustments, taxpayer made no attempt to determine the exact amount of merchant discount income and finance income that was accrued, but not received, during the taxable period.

These adjustments to income and expenses converted a $300,000 accrual method tax loss for 1973 into a cash method tax loss exceeding $1,700,000. In 1974, a similar conversion to cash method increased SCS's reported tax loss by more than $200,000. In his Notice of Deficiency Upon Audit, the Commissioner of Internal Revenue took the position that the accrual method of accounting clearly reflected the income of SCS and therefore he recomputed its income under the accrual method of accounting, thus increasing plaintiff's taxable income.

In March 1980, having paid the deficiency asserted, plaintiff sued the United States for $1,190,486.33 plus interest, and in July 1981 filed a refund suit for $4,119,698.14 plus interest. In the former suit plaintiff recovered judgment for $217,671 plus interest and in the second suit $2,892,196 plus interest. On appeal, plaintiff has asked us to reverse and remand these judgments so that the refunds may be recomputed consistently with the cash receipts and disbursements method of accounting.

---

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

Before submission to the district court, the parties stipulated that the sole issue remaining in these consolidated actions concerns the legality of the use by SCS of the cash receipts and disbursements method of accounting for tax purposes for the tax years 1973 and 1974. In view of this stipulation taxpayer does not contest that its subsidiary switched from an accrual to a cash method of accounting in computing income taxes for those years. In his memorandum of decision, Judge Steckler concluded that the Commissioner of Internal Revenue did not abuse his discretion in requiring SCS to use the accrual method of accounting rather than the cash method for tax purposes. Therefore he granted summary judgment to the United States on the issue of liability.

The memorandum decision noted that in both years in issue, SCS kept its books on the accrual method of accounting. However, for tax purposes, it used the cash receipts and disbursements method of accounting by making certain adjustments to its accrual income and expense figures. The district court correctly noted that under Section 446(b) of the Internal Revenue Code of 1954, the Commissioner has broad discretion to determine whether accounting methods "clearly reflect income." His interpretation may not be set aside unless "clearly unlawful" or "plainly arbitrary" (*Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 532, 533, 99 S.Ct. 773, 780, 781, 58 L.Ed.2d 785) because of his "broad powers in determining whether accounting methods used by a taxpayer clearly reflect income." *Commissioner v. Hansen*, 360 U.S. 446, 467, 79 S.Ct. 1270, 1281, 3 L.Ed.2d 1360. After thoroughly considering the entire record, the court in a well-reasoned opinion granted summary judgment to the government, concluding that several factors in this case required it to hold that the Commissioner had not abused his discretion in setting aside taxpayer's method of tax accounting.

## II.

*Introduction*

Under the stipulation governing this case, it was conceded that SCS used the cash receipts and disbursements method of accounting for tax purposes for the two years in question. As permitted by Section 446(b) of the Internal Revenue Code of 1954, the Commissioner of Internal Revenue determined that the taxable income of SCS should be computed under the accrual method of accounting, employed by it for all other purposes, since the method it used for computing taxable income "does not clearly reflect income." The Commissioner's interpretation of the quoted phrase is not to "be interfered with unless clearly unlawful." *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 532, 99 S.Ct. 773, 781, 58 L.Ed.2d 785. Our task is limited to determining whether the Commissioner abused his discretion in finding it necessary to change the taxpayer's method of accounting (*RCA Corp. v. United States*, 664 F.2d 881, 886 (2d Cir.1981), certiorari denied, 457 U.S. 1133, 102 S.Ct. 2958, 73 L.Ed.2d 1349), recalling that a taxpayer "has the heavy burden of proving that the Commissioner's determination is plainly arbitrary." *Record Wide Distributors, Inc. v. Commissioner*, 682 F.2d 204, 206 (8th Cir.1982), certiorari denied, 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015.

Here SCS used the accrual method of accounting on its financial statements, and the certified public accounting firm it employed certified that this method fairly reflected SCS's "financial position * * * in conformity with generally accepted accounting principles." It only changed to the cash method of accounting for purposes of calculating its taxable income, thus increasing its tax losses by large amounts. However, under Section 446 of the Internal Revenue Code of 1954, the Commissioner determined that the cash method of accounting did not "clearly reflect income" of the taxpayer for 1973 and 1974 and therefore required it to employ the accrual method of accounting for tax purposes. In his "Preliminary Notice of Proposed Adjustment" (Pl.'s Exh. 4 to Deposition of Charles Smith), the Commissioner set forth several reasons why he had used his discretion under Section 446(b) to

alter the taxpayer's method of tax accounting to the accrual method. First, the accrual method was consistent with Generally Accepted Accounting Principles (GAAP) and taxpayer's own accountants had certified that the financial statements of the corporation had been prepared in accordance with GAAP. Second, both the Federal Reserve Board and the Securities and Exchange Commission required the use of the accrual method in the preparation of financial statements. Third, prior to American Fletcher's acquisition of SCS, that corporation's income was reported for both financial and tax purposes on the accrual method. Fourth, an affiliate of American Fletcher operated a Master Charge credit card service which reported its income for tax purposes on the accrual method. Fifth, the Commissioner noted that after its acquisition by taxpayer, SCS itself had used the accrual method of accounting for every purpose other than federal income tax, including annual statements to shareholders, financial statements for loan purposes, and for routine management of financial operations. Sixth, the Commissioner concluded that because of the estimates used, the figures "yield[ed], at best, only an estimate of cash receipts." Seventh, the Commissioner found the cash method of accounting particularly inappropriate because of the impact that the Christmas shopping season had on the credit card business. More specifically, while SCS would be required to reimburse the merchants that it had contracted with almost immediately after items were purchased by consumers, it would be unable to collect from the cardholders until the beginning of the following year. Therefore, the cash method of accounting would distort its income.

■ In determining that the Commissioner did not abuse his discretion, the district court relied primarily on three grounds, concluding that the cash method employed by SCS (1) did not conform with "generally accepted accounting principles," (2) impermissibly relied upon estimates, and (3) produced results that were not "substantially identical" under its method and the method of accounting required by the Commissioner. As the discussion below will indicate, we agree with the district court that all three of these factors are relevant in determining whether the Commissioner has abused his discretion under Section 446(b). It is important to note, however, that none of the grounds relied upon by the district court, standing alone, is dispositive. Each factor is entitled to some weight but the appropriate weight will vary from case to case. We should also point out that our decision in this case is not based on those three factors alone. Rather, we hold only that when those three factors are considered in combination with the other reasons outlined in the Commissioner's foregoing Notice of Proposed Adjustment, it cannot be said that the Commissioner abused his discretion under Section 446(b). Nonetheless, we confine our discussion below to those points specifically relied on by the district court and objected to on appeal.

*Generally Accepted Accounting Principles*

■ Under the applicable Treasury Regulation, "[a] method of accounting which reflects the consistent application of generally accepted accounting principles ... will ordinarily be regarded as clearly reflecting income." Treasury Regulation 1.446–1(a)(2), 26 C.F.R. § 1.446–1. The taxpayer admits that its cash method is not in accord with generally accepted accounting principles which recognize "that only the accrual method may be used for purposes of financial accounting." (Br. 23). The use of the cash method of accounting is particularly inappropriate for SCS because it generates substantial amounts of receivables. See Finney & Miller, *Principles of Accounting* —Intermediate 12 (7th ed. 1974).

Not only does the applicable regulation make "generally accepted accounting principles" a pertinent criterion but the courts have also applied that criterion to establish what method "clearly reflect[s] income" under Section 446 of the Code. *Wilkinson–Beane, Inc. v. Commissioner,* 420 F.2d 352, 356 (1st Cir.1970); *Peterson Produce Co. v. United States,* 205 F.Supp. 229, 244 (W.D.Ark.1962), affirmed, 313 F.2d 609

(8th Cir.1963); *Electric & Neon, Inc. v. Commissioner*, 56 T.C. 1324, 1333 (1971), affirmed, 496 F.2d 876 (5th Cir.1974); see also 2 J. Mertens, The Law of Federal Taxation § 12.01 at 9 (1986 ed.). The cash method does not conform to generally accepted accounting principles for companies like SCS. The Commissioner appropriately considered this departure from accepted practices in reviewing the returns filed by SCS. *All–Steel Equipment, Inc. v. Commissioner*, 467 F.2d 1184, 1185 (7th Cir. 1972); *Photo–Sonics, Inc. v. Commissioner*, 357 F.2d 656, 658 (9th Cir.1966). Since the accrual method is the generally accepted method of accounting for a company like SCS and was made compulsory for it by the Securities and Exchange Commission and Federal Reserve System as the method that "clearly reflect[s] income," the Supreme Court has held "it is almost presumptively controlling of federal income tax consequences." *Commissioner v. Idaho Power Co.*, 418 U.S. 1, 15, 94 S.Ct. 2757, 2765, 41 L.Ed.2d 535; see *id.* at 15 n. 10, 94 S.Ct. at 2766 n. 10 (citing Section 446).

The district court did not condemn the use of the cash method merely because it did not conform to generally accepted accounting principles. Instead, Judge Steckler observed that the standard practice of the credit card industry is to use the accrual method, and that even one of plaintiff's experts admitted that in his 20 years of accounting practice he had "never seen a credit card company [such as SCS] as such use the cash basis of accounting for any purpose." Its tax manager testified on deposition that he was not "aware of any consumer credit card companies that use the cash method of accounting for tax purposes." (R. Item 7, Exh. G at 9).[1]

*Use of Estimates*

Another reason employed by the district court in upholding the rejection of the cash method of accounting here was because it was based on estimates. Because of the principle of annual accounting adopted by the Congress and Supreme Court,[2] a taxpayer may not predicate its income determinations on estimates without a statutory authorization when using a cash basis of accounting. *E.g., Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 543, 99 S.Ct. 773, 786, 58 L.Ed.2d 785. Taxpayer has not cited any authorities permitting the use of estimates in cash basis accounting unless authorized by statute.[3] Again, while this factor is not dispositive, it is permissible for the Commissioner to take this factor into account in converting a taxpayer's tax accounting from a cash to an accrual method.

*Substantial Identity Results*

A third factor considered by the district court was taxpayer's failure to demonstrate that the cash method and the accrual method preferred by the Commissioner produced substantially identical results. This was a legitimate factor. Thus in *Wilkinson–Beane, Inc. v. Commissioner*, 420 F.2d 352 (1st Cir.1970), the court of appeals upheld the Commissioner's requirement that taxpayer adopt the accrual method of accounting under the regulations. To have upheld the taxpayer's position there, the First Circuit ruled that "the taxpayer must demonstrate substantial identity of results between his method and the method selected by the Commissioner." 420 F.2d at 356. To the same effect, see *Asphalt Products Co., Inc. v. Commissioner*, 796 F.2d 843,

1. Taxpayer relies on Rev.Rul. 78–40, 1978–1 Cum.Bull. 136 and Rev.Rul. 71–365, 1971–2 Cum.Bull. 219 as being to the contrary, but those rulings involved banks and not credit card services, and in those cases the cash method may have been allowed for reasons not present here. Rev.Rul. 78–40 in particular permitted cash method treatment of discount income for the credit card operation of a full-service bank with an across-the-board cash method accounting system. In addition, as the Commissioner has pointed out, Congress now precludes any corporation with receipts of more than $5,000,-000 from using the cash method. Section 448

of the Internal Revenue Code of 1986 (26 U.S.C. § 448).

2. See *Burnet v. Sanford & Brooks Co.*, 282 U.S. 359, 363–365, 51 S.Ct. 150, 151–152, 75 L.Ed. 383.

3. Even accrual basis taxpayers may not use estimates that fail to respect the criteria of annual tax accounting. *American Automobile Ass'n v. United States*, 367 U.S. 687, 692, 693, 81 S.Ct. 1727, 1729, 1730, 6 L.Ed.2d 1109.

849 (6th Cir.1986), reversed *per curiam* on a different ground, —— U.S. ——, 107 S.Ct. 2275, 96 L.Ed.2d 97. These cases are relevant even though they involve Section 471 of the Internal Revenue Code of 1954 because under that Section and Section 446(b), the provision involved here, the Commissioner may make changes by imposing a new accounting method or by imposing inventories if necessary to reflect income clearly.

### III.

In the court below, the Commissioner filed a motion for summary judgment and thereafter taxpayer filed a similar motion stating "there is no genuine issue as to any material fact" (R. Item 10). In this Court, taxpayer again contends that it "was entitled in the district court to summary judgment as a matter of law." (Br. 36). Nevertheless it also contends that it is entitled to a trial of many material issues of disputed fact. (Br. 36–37). Taxpayer has not convinced us that there are any outcome-determinative facts in dispute under the applicable law. *Wallace v. Greer*, 821 F.2d 1274, 1276 (7th Cir.1987). Therefore the district court properly granted summary judgment to the government in both cases.[4] The judgments are affirmed.

CUDAHY, Circuit Judge, concurring:

In view of the extraordinary deference due the Commissioner under section 446 of the Internal Revenue Code, we ought to affirm his determination that the cash method income figures produced by Shopper's Charge do not clearly reflect income. For the most part, the majority presents an excellent analysis of a case that is by no means as simple as it appears at first blush. Essentially, this case involves the availability for tax purposes of the cash accounting method to a taxpayer which is "really" on the accrual method.

I must write separately, however, about the majority's treatment of estimation as a basis for the result. First, I shall briefly describe how Shopper's Charge made its

estimates. In deriving cash method income, Shopper's Charge significantly revised two sets of income accounts: merchants discount income, obtained from percentage commissions that Shopper's Charge withheld from the payments that it received from consumers and passed on to merchants, and finance income, obtained from interest charges on unpaid credit balances. To derive annual cash method merchant discount income from the corresponding accrual method figure, Shopper's Charge attempted to estimate the commissions that it had included in accrual method income before it actually collected the corresponding payments from consumers. Thus, it subtracted all of the finance income accrued during December and half of November. This deduction was based on a judgment that approximately one and one-half months worth of finance income remained uncollected at year's end. *See* Appellee's Br. at 4.

The Commissioner offers two objections to these calculations: (1) the estimates were used to circumvent the principle of annual accounting, and (2) the estimates introduced unacceptable inaccuracies. The majority, relying on *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979) and *American Automobile Association v. United States*, 367 U.S. 687, 81 S.Ct. 1727, 6 L.Ed.2d 1109 (1961), finds support for the Commissioner's position in the first rationale.

This analysis, however, overlooks an important difference between the estimates at issue in *Thor* and *American Automobile Association* and the estimates used by Shopper's Charge. In *Thor*, a power tool manufacturer sought to reduce current income by reducing the book value of its aging inventory of spare parts. Thor reduced the book value of its parts inventory based on estimates of the proportion of its existing inventory that would ultimately prove unsalable. In *American Automobile Association*, a road club sought to offset current receipts of membership dues by the estimated costs of providing servic-

---

**4.** The affidavits supporting taxpayer's motion for summary judgment did not state that its

method of accounting clearly reflected income for tax purposes.

es in later tax periods. For both of these taxpayers, the use of estimates was intended to hasten the recognition of future costs or losses that, during the tax year at issue, were still contingent on future events.

The estimates used by Shopper's Charge, in contrast, do not involve projections about future events. They were merely an inexpensive way to obtain imprecise cash accounting figures from a bookkeeping system designed around accrual accounting principles. Shopper's Charge could, at greater administrative expense, have produced more exact cash method figures. It could, for example, have determined its actual receipts of finance income at year's end rather than simply adjusting for a one and one-half month backlog of receivables. The estimates used by Shopper's Charge may have detracted from the precision of the cash method income figures, but they did not, in my view, violate the principle of annual accounting that the Court sought to defend in *Thor* and *American Automobile Association*. Cf. *Kaiser Steel Corp. v. United States*, 717 F.2d 1304, 1307 (9th Cir.1983) (distinguishing uncertainty about the "very fact" of liability, which precludes taxpayer from relying on estimates, from uncertainty about the amount of liability, which need not).

There may, however, be some potential merit in the Commissioner's attack on the imprecision inherent in the estimates on which Shopper's Charge relied. Taxpayers are required to keep adequate records to support their declarations of taxable income, and have no grounds for protest if the Commissioner imposes a workable accounting method when confronted with inadequate records. *See In re Newman*, 94 F.2d 108, 111 (6th Cir.1938); *Gajewski v. Commissioner*, 67 T.C. 181, 196 (1976); *see also* 26 C.F.R. § 1.6001–1(a) (1986) ("any person subject to tax ... shall keep such permanent books of account or records ... as are sufficient to establish the amount of gross income ... required to be shown by

such person in any return"). The Commissioner contends that Shopper's Charge could have produced more accurate cash method figures, but failed to do so, and that this failure supports the conclusion that the cash method did not clearly reflect income.

Shopper's Charge responds that the affidavits of its accounting experts, which the government has accepted for the purposes of the summary judgment motion (Defendant's Memorandum in Support of its Motion for Summary Judgment at 13–14, Nos. 80–262C, 81–817C), establish that its method was consistent with standard accounting practice. We must accept the experts' representations that Shopper's Charge complied with "appropriate and accepted accounting practices" (*e.g.*, Plaintiff's Motion for Summary Judgment, Exhibit A–3, Affidavit of Lowell R. Allen at 5). The experts' affidavits, however, approve of the estimation techniques "under all the circumstances" [1]—including the primary reliance of Shopper's Charge on an accrual accounting system. This leaves open the possibility that "accepted accounting practices" would have dictated a higher level of precision if Shopper's Charge had relied exclusively on cash accounting and had organized its entire accounting system on this basis. If, in fact, the method used here comported with accepted practices only for taxpayers seeking to derive cash method figures from accrual method accounts, the experts' representations are not persuasive. The record, however, does not tell us how the cash method figures upon which Shopper's Charge relies might differ from the figures that would be produced by a similarly situated firm that organized its accounting system around cash method principles. Because of this deficiency, we ought not to rely on the estimation issue to support the Commissioner's decision.

There are, however, adequate other grounds to affirm the result. Shopper's Charge, alone among the subsidiaries of

---

**1.** Accountants who provided affidavits for Shopper's Charge hedged their endorsement of the cash method accounts with phrases including "under the circumstances of SCS operations" (Plaintiff's Motion for Summary Judgment, Ex-

hibit A–2, Claytor Affidavit at 4, Nos. IP 80–262–C, IP 81–817–C), "under the circumstances" (*id.*, Exhibit A–3, Allen Affidavit at 5), and "under the circumstances of its business" (*id.*, Exhibit A–4, Robertson Affidavit at 4).

American Fletcher, disregarded generally accepted accounting principles for purposes of computing its taxable income and put together (based on accrual method figures) a set of cash method books. These alternative accounts, because of the large accounts receivable balances that credit card companies carry at year's end, substantially reduced taxable income for the two years in question. The majority's analysis of these factors (and the existence of additional factors cited by the Commissioner) persuade me that the Commissioner did not abuse his broad discretion.