J. P. SHEAHAN ASSOCIATES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
J.P. Sheahan Assoc., Inc. v. Commissioner
Docket No. 24300-90
United States Tax Court
T.C. Memo 1992-239; 1992 Tax Ct. Memo LEXIS 272; 63 T.C.M. (CCH) 2842; April 23, 1992, Filed *272 Decision will be entered under Rule 155. David J. Kolat, for petitioner. Mark S. Pendery, for respondent. TANNENWALD
TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined a deficiency in and additions to petitioner's Federal income tax for the taxable year ending May 31, 1987, as follows: Additions To Tax
Deficiency
Sec. 6653
Sec. 6653
Sec. 6661
(a)(1)(A) [1]
(a)(1)(B)
$ 32,310.00
$ 1,615.50
50 percent of the
$ 8,077.50
interest due on the deficiency
The principal issue for decision is whether the Commissioner abused her discretion under sections 446(b) and 471 by requiring that petitioner account for inventories and use the accrual method of accounting (accrual method). If this issue is resolved in favor of respondent, then we must decide the issues involving the additions to tax under sections 6653(a)(1)(A) *273 and (B) and 6661. [2]
This case was submitted fully stipulated pursuant to Rule 122(a). All the stipulated facts are found accordingly. The attached exhibits are incorporated by reference. Petitioner had its principal place of business at Midland, Michigan, at the time it filed its petition herein. It commenced business in 1978 in Midland, Michigan, and was incorporated in 1980 as a Michigan corporation. Its principal shareholder and founder is James P. Sheahan. Petitioner's taxable year is June 1 to May 31 of the following year. It filed its Federal income tax return for the taxable year ending May 31, 1987, with the Internal Revenue Service Center, Cincinnati, Ohio. *274 Petitioner's principal business is commercial roofing repair. Petitioner also performs consulting, inspection, and quality control work in respect of its roofing repair business and constructs replacement roofs for existing structures. Approximately 80 percent of petitioner's commercial roofing repair business during the year at issue was performed for Dow Chemical Company (Dow). A large majority of petitioner's commercial roofing repair work is performed in the midwestern and eastern regions of the United States. Petitioner conducts its roofing repair work in 13 States. During the 1980's, petitioner had two bases of operations: Midland, Michigan, and Davenport, Iowa. The Davenport, Iowa, operation was sold to James P. Sheahan's son in June 1988. Petitioner performed warranty repair work for Dow where roofing materials previously sold by Dow were in need of repair. A typical job for Dow involved the following steps: (1) Dow contacts petitioner concerning a repair job, (2) Dow and petitioner enter into an oral agreement for the work to be performed, (3) petitioner inspects the job site and determines the roofing repair work to be done, (4) petitioner provides a work crew for *275 labor, and (5) repair work is performed with petitioner purchasing preparatory materials and supplies and Dow providing the insulation materials for the job. After a job is completed, petitioner submits an itemized billing invoice to Dow. The invoice reflects separate charges for labor, materials and supplies, and miscellaneous expenses, and typically includes a 25-percent markup to the costs incurred by petitioner to repair the roof. Leftover materials and supplies in respect of work for Dow are shipped to the next job or held by petitioner at one of its base locations until they are shipped to a job site. Approximately 20 percent of petitioner's roofing repair work is not related to Dow. Petitioner is normally contacted by a customer regarding repair work and conducts an inspection of the work to be performed. It then contracts with the customer to perform the roofing repair work and provides the labor and purchases the materials and supplies needed for the job. Once the job is completed, petitioner submits a bill to the customer based on a bid which included petitioner's cost of repairs plus a 25-percent profit. Materials and supplies remaining at the close of a job are *276 returned to the supplier for credit. Petitioner has used the cash receipts and disbursements method of accounting (cash method) to report income and expenses of the business since its inception in 1978. Inventory accounting has never been used for either tax or financial accounting purposes. Materials and supplies purchased for each roofing repair job were deducted in the year of purchase. All expenses were deducted in the year paid. Income received from each job was reported for tax purposes in the year it was received. Petitioner's stipulated cash basis tax returns reflect zero opening and closing inventories and sales and cost of goods sold (purchases and labor) as follows: Cost of Goods Sold
(Purchases Plus
Year
Sales
Labor Cost)
1985
$ 1,309,584.05
$ 864,362.98
1986
1,177,768.57
866,650.43
1987
1,364,415.97
851,595.25
1988
1,420,936.28
971,810.86
The returns were prepared by a certified public accounting firm. The following reflects petitioner's accounts receivable and accounts payable at the end of each fiscal year: Accounts
Accounts
Year
Receivable
Payable
1982
$ 49,193
$  2,931
1983
153,597
5,435
1984
245,387
16,915
1985
126,951
4,853
1986
186,065
21,306
1987
167,326
27,391
1988
131,289
38,240
1989
57,478
9,270
*277 Respondent's calculations of the adjustments to petitioner's income on the accrual basis reflect the following: Fiscal
Change in
Change in
Net Annual
Cumulative
Year
Payables
Receivables
Change
Net Increase
1982
$  5,349 $  48,366 $  43,017 $  43,017
1983
9,691 108,746 99,055 142,072
1984
15,993 91,485 75,492 217,564
1985
(8,880)
(120,143)
(111,263)
106,301
1986
10,879 86,596 75,717 182,018
1987
10,012 (32,894)
(42,906)
139,112
Total
$ 43,044 $ 182,156 $ 139,112 The principal issue before us is whether respondent abused her discretion in requiring petitioner to change from the cash method to the accrual method of accounting. Subsumed in this issue is the question whether petitioner should be required to use the inventory method for tax purposes. Our path to decision is governed by the provisions of sections 446 and 471 and the regulations thereunder. The judicial history of sections 446 and 471 reveal that the courts have considered these sections intertwined and have accorded respondent broad discretion in their application. The classic articulation of this proposition is set forth in Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532 (1979): *278 It is obvious that on their face, §§ 446 and 471, with their accompanying Regulations, vest the Commissioner with wide discretion in determining whether a particular method of inventory accounting should be disallowed as not clearly reflective of income. This Court's cases confirm the breadth of this discretion. In construing § 446 and its predecessors, the Court has held that "the Commissioner has broad powers in determining whether accounting methods used by a taxpayer clearly reflect income." Commissioner of Internal Revenue v. Hansen, 360 U.S. 446, 467 * * * (1959). Since the Commissioner has "much latitude for discretion," his interpretation of the statute's clear-reflection standard "should not be interfered with unless clearly unlawful." Lucas v. American Code Co., 280 U.S. 445, 449 * * * (1930). * * * It is in the foregoing context, which imposes a heavy burden of proof on petitioner, Asphalt Products Co. v. Commissioner, 796 F.2d 843, 848 (6th Cir. 1986), affg. on this issue T.C. Memo. 1984-208, revd. on another issue 482 U.S. 117 (1987), that we address the issues before us. *279 We deal first with the inventory issue. Section 471 provides in pertinent part: (a) General Rule. -- Whenever in the opinion of the Secretary the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income. The regulations under section 471 provide in pertinent part: Need for inventories. -- In order to reflect taxable income correctly, inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor. * * * [Sec. 1.471-1, Income Tax Regs.] Petitioner contends that, because of the way it did business, i.e., materials were only ordered on an "as-needed" basis and leftover materials were either returned to the supplier for credit or earmarked for another job, it had no yearend inventory and therefore did not hold merchandise for sale within the meaning of the regulations. Consequently, it maintains that it should not be required *280 to utilize inventories. In so contending, petitioner ignores the fact that the regulations speak in terms of "every case in which the production, purchase, or sale of merchandise is an income-producing factor." This is the foundation for the determination by respondent, pursuant to section 471, that inventories should be used; the fact that such use may produce a zero or minimal yearend inventory is irrelevant. Cf. Akers v. Commissioner, T.C. Memo. 1984-208, affd. on this issue sub nom. Asphalt Products Co. v. Commissioner, 796 F.2d 843 (6th Cir. 1986), revd. on another issue 482 U.S. 117 (1987). Further, the record clearly shows that the materials utilized by petitioner were held for sale and produced income. They were shown separately on the bill to the customer, they represented a substantial amount of the total bill, and petitioner added a 25-percent markup to the billed price. The fact that the materials were earmarked for particular jobs is not in point. Cf. Epic Metals Corp. v. Commissioner, T.C. Memo. 1984-322, affd. without published opinion 770 F.2d 1069 (3d Cir. 1985). Thus, *281 petitioner's attempt to distinguish Wilkinson-Beane, Inc. v. Commissioner, 420 F.2d 352 (1st Cir. 1970), affg. T.C. Memo. 1969-79, and Surtronics, Inc. v. Commissioner, T.C. Memo. 1985-277, on the ground that they involved purchase of goods not earmarked for particular customers falls by the wayside. Finally, petitioner seeks comfort from the following language in Asphalt Products Co. v. Commissioner, 796 F.2d at 849: We realize that the result seems harsh in this case. If the temporary and rather insignificant increase in inventories of raw materials had been the only basis for the Commissioner's determination, we would have been inclined to find an abuse of discretion. We do not construe the Code provisions and regulations relating to inventories in the absolute terms adopted by the Commissioner and the Tax Court. * * * We find nothing in this language which supports the proposition that the taxpayer therein, whose situation was quite similar to that of petitioner, was not required to utilize inventories in computing income. The most that can be said of the Sixth Circuit's pronouncement is that, if *282 the only element in applying the "substantial-identity-in-results" test under section 446 (see infra pp. 15-17) had been the insignificant variation in the small amount of inventory in that case, the court "would have been inclined" to find an abuse of discretion in applying that section. In this articulation of its views, the Court of Appeals was merely suggesting, without deciding, that, under such circumstances, it would not have necessarily followed the mandate of section 1.446-1(c)(2)(i), Income Tax Regs., which mandates the accrual method of accounting when inventories are used and might have found an abuse of discretion if respondent failed, pursuant to section 1.446-1(c)(2)(ii), Income Tax Regs., to permit continued use of the cash method of accounting even though the inventory method was required to be used. In light of the foregoing, even though an appeal herein will be to the Sixth Circuit, we see no need, in resolving the inventory issue, to apply the doctrine of Golsen v. Commissioner, 54 T.C. 742, 756-758 (1970), affd. 445 F.2d 985 (10th Cir. 1971). We hold that petitioner is required to utilize the inventory method in computing *283 its taxable income. [3]
We are still left with the question of the application of section 446 and the regulations thereunder. Section 446 provides in pertinent part: (a) General Rule. -- Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books. (b) Exceptions. -- If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly *284 reflect income. (c) Permissible Methods. -- Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting -- (1) the cash receipts and disbursements method; (2) an accrual method; (3) any other method permitted by this chapter; or (4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary. The regulations under section 446 provide in pertinent part: (2) It is recognized that no uniform method of accounting can be prescribed for all taxpayers. Each taxpayer shall adopt such forms and systems as are, in his judgment, best suited to his needs. However, no method of accounting is acceptable unless, in the opinion of the Commissioner, it clearly reflects income. [Sec. 1.446-1(a)(2), Income Tax Regs.] * * * (i) In all cases in which the production, purchase, or sale of merchandise of any kind is an income-producing factor, merchandise on hand (including finished goods, work in process, raw materials, and supplies) at the beginning and end of the year shall be taken into account in computing the taxable income of the year. (For rules relating to computation *285 of inventories, see sections 263A, 471 and 472, and the regulations thereunder.) [Sec. 1.446-1(a)(4)(i), Income Tax Regs.] * * * (c) Permissible methods -- (1) In general. Subject to the provisions of paragraphs (a) and (b) of this section, a taxpayer may compute his taxable income under any of the following methods of accounting: (i) Cash receipts and disbursements method. [Sec. 1.446-1(c)(1)(i), Income Tax Regs.] * * * (2) Special rules. (i) In any case in which it is necessary to use an inventory the accrual method of accounting must be used with regard to purchases and sales unless otherwise authorized under subdivision (ii) of this subparagraph. (ii) * * * the Commissioner may authorize a taxpayer to continue the use of a method of accounting consistently used by the taxpayer, even though not specifically authorized by the regulations in this part, if, in the opinion of the Commissioner, income is clearly reflected by the use of such method. See section 446(a) and paragraph (a) of this section, which require that taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books, and *286 section 446(e) and paragraph (e) of this section, which require the prior approval of the Commissioner in the case of changes in accounting method. [Sec. 1.446-1(c), Income Tax Regs.] Initially, we direct our attention to petitioner's reliance on the fact that it has consistently utilized the cash method of accounting since its inception and that the cash method is specifically authorized by section 446. While consistency is an element to be considered, it does not, in and of itself, satisfy petitioner's burden of proving that respondent abused her discretion. Asphalt Products Co. v. Commissioner, 796 F.2d at 848; Thomas v. Commissioner, 92 T.C. 206, 226 (1989), and cases cited thereat. Nor does respondent's acceptance of petitioner's use of the cash method of accounting in the earlier years justify continued use of that method if it is otherwise erroneous. Knight-Ridder Newspapers, Inc. v. United States, 743 F.2d 781, 793 (11th Cir. 1984); Lincoln Electric Co. v. Commissioner, 444 F.2d 491, 493 (6th Cir. 1971), affg. 54 T.C. 926 (1970); Thomas v. Commissioner, supra. *287 In a similar vein, we reject petitioner's contention that respondent is precluded from requiring a change of its method of accounting because the cash method is specifically authorized by statute. Such a contention is contradicted by the language of section 446(c) which specifies that the "permissible methods" are "Subject to the provisions of subsections (a) and (b)" and the language of subsection (b) which authorizes respondent to require the use of a method which clearly reflects income if the method used by the taxpayer does not so do. Petitioner's reliance on language in Hallmark Cards, Inc. v. Commissioner, 90 T.C. 26, 31 (1988) (respondent "may not reject * * * a method of accounting * * * which is specifically authorized in the Code or regulations") is misplaced. That language as well as similar language in Orange & Rockland Utilities v. Commissioner, 86 T.C. 199, 215 (1986), was made in the context of applying the all-events test of accrual accounting and was not directed to a situation where, as is the case herein, use of the inventory method is required. Similar reasoning disposes of petitioner's reliance on Peninsula Steel Products & Equipment Co. v. Commissioner, 78 T.C. 1029, 1052 (1982), *288 where we held that respondent could not deprive a taxpayer of the right to use both the completed contract and inventory methods of accounting where no inconsistency appeared and such a synthesis of methods was not precluded by the regulations. Indeed, petitioner recognizes the impact of the inventory element in that a large portion of its argument that respondent abused her discretion in requiring it to adopt the accrual method of accounting under section 446 rests upon the proposition that it did not, and was not required to, utilize the inventory method of accounting. We have disposed of this proposition in our discussion of the applicability of section 471, supra pp. 8-10, and see no need to repeat that discussion here. Generally, where a taxpayer has been required to maintain inventories or has not argued that it was under no obligation to do so, it has been held that the taxpayer must use the accrual method of accounting in accordance with the mandate of section 1.446-1(c)(2)(i), Income Tax Regs., supra p. 12. In the process of reaching this conclusion, the courts have developed, in the context of accounting for inventory, a substantial-identity-of-results test for *289 determining whether respondent has abused her discretion in not affording the taxpayer the opportunity to continue to use the cash method of accounting under section 1.446-1(c)(2)(ii), Income Tax Regs., supra p. 12. The substantial-identity-of-results test was first articulated in Wilkinson-Beane, Inc. v. Commissioner, 420 F.2d at 356, and more recently applied by the Court of Appeals for the Sixth Circuit (to which an appeal herein will lie) in Asphalt Products Co. v. Commissioner, supra.See also Ralston Development Corp. v. United States, 937 F.2d 510, 514 (10th Cir. 1991); American Fletcher Corp. v. United States, 832 F.2d 436, 440 (7th Cir. 1987); Surtronics, Inc. v. Commissioner, T.C. Memo. 1985-277. In Asphalt Products Co. v. Commissioner, supra, the taxpayer produced and sold emulsified asphalt for road paving purposes. The taxpayer's primary customers were county governments in Tennessee who paid for the asphalt with their allocable shares of revenues generated from State gasoline taxes. As a result of the Arab oil embargo of 1973, the State's *290 collection of gasoline taxes declined substantially, causing shortfalls in revenue for the counties. Due to the counties' shortage of funds for road paving expenses, payments to petitioner were delayed, and its accounts receivable more than tripled in the course of a year. Respondent determined that the cash method of accounting, although consistently used by the taxpayer, failed clearly to reflect the taxpayer's income and recomputed its income for 1974 under the accrual method. Emphasizing the wide discretion given respondent to make such changes, the court held that a taxpayer must prove "substantial identity of results" between its method and the method chosen by respondent to prove an abuse of discretion. Asphalt Products Co. v. Commissioner, 796 F.2d at 849. Finding that the costs of materials sold in 1974 were deducted in that year while accounts receivable of $ 238,000 for work completed in 1974 were not included in the taxpayer's income until their receipt in a later year, the Court held that the cash method of accounting did not clearly reflect income. Petitioner argues that Asphalt Products is distinguishable because the taxpayer therein experienced *291 a substantial increase in accounts receivable for the tax years at issue while petitioner's accounts receivable decreased in the tax year at issue as well as in subsequent tax years, see supra p. 6. Citing Osterloh v. Lucas, 37 F.2d 277, 278-279 (9th Cir. 1930), petitioner further attacks the holding in Asphalt Products asserting that the court's interpretation of the word "clearly" in the phrase "clearly reflect income" to mean "accurately", 796 F.2d at 849, would essentially preclude use of the cash method of accounting, a result at odds with subsections (a) and (c) of section 446. We disagree. To begin with, it is not the increasing or decreasing nature of a taxpayer's accounts receivable that determines whether income is "clearly" reflected. For example, if a taxpayer using the cash method held accounts receivable of $ 5,000,000 on May 31, 1985, $ 2,500,000 on May 31, 1986, $ 1,250,000 on May 31, 1987, and $ 625,000 on May 31, 1988, its accounts receivable are undoubtedly decreasing rapidly. Nonetheless, assuming the costs incurred to produce such income were deducted in years prior to its receipt, use of the cash method *292 would greatly distort the matching of those expenses with the resulting income. Petitioner's reliance on Osterloh v. Lucas, supra, is misplaced. The standard adopted by that case, i.e., that a taxpayer's books need only be kept "fairly and honestly" has subsequently been replaced with an "accuracy" standard in determining whether the taxpayer's accounting method clearly reflects income. See Caldwell v. Commissioner, 202 F.2d 112, 114-115 (2d Cir. 1953); Surtronics, Inc. v. Commissioner, supra.See also Asphalt Products Co. v. Commissioner, 796 F.2d at 847. Nor do we agree with petitioner that equating "substantial identity of results" with "accurately" will result in depriving any taxpayer who is required to use the inventory method from ever using the cash method of accounting. In so arguing, petitioner ignores the fact that "substantial identity of results" does not require total precision or identity of results. See Drazen v. Commissioner, 34 T.C. 1070, 1077-1078 (1960). See also Gertzman, Federal Tax Accounting 2-29 (1988). Unfortunately, there are no absolutes *293 in this area of the tax law, and where to draw the line must be determined on the facts of each case. See Madison Gas & Electric Co. v. Commissioner, 72 T.C. 521, 555 (1979), affd. 633 F.2d 512 (7th Cir. 1980). That petitioner has crossed the line is evident from the sizable distortion which results from its use of the cash method in a business that generates sizable amounts of accounts receivable. Petitioner's workpapers reflect an increase in tax liability of $ 23,970 for the tax year ended May 31, 1987, under the accrual method, as well as increases (decreases) in its taxable income under the accrual method of $ 43,017 for the tax year ended May 31, 1982; $ 99,055 for the tax year ended May 31, 1983; $ 75,492 for the tax year ended May 31, 1984; <$ 111,263> for the tax year ended May 31, 1985; and $ 75,717 for the tax year ended May 31, 1986. The logical conclusion to be drawn from these figures is that petitioner managed to defer income to a later year while currently deducting the costs incurred to generate that income. In this connection, we note that the percentage variations in taxable income are substantially in excess of those involved *294 in Wilkinson-Beane, Inc. v. Commissioner, 420 F.2d at 356. See also Ralston Development Corp. v. United States, 937 F.2d at 513; Surtronics, Inc. v. Commissioner, supra.
Finally, petitioner seeks to avoid the impact of the substantial-identity-of-results test by arguing that respondent cannot resort, under the circumstances herein, to section 446 without proving that its method does not clearly reflect income, citing language in Morris-Poston Coal Co. v. Commissioner, 42 F.2d 620, 622 (6th Cir. 1930), and Glenn v. Kentucky Color & Chemical Co., 186 F.2d 975, 977 (6th Cir. 1951). The Court of Appeals for the Sixth Circuit in Asphalt Products Co. v. Commissioner, 796 F.2d at 847-848, clearly distinguished these two cases and rejected a similar maneuver by the taxpayer in that case to turn a negative statement in the regulations into a positive rule, making clear that a heavy burden of proof remained with the taxpayer. We see no need to repeat the Circuit Court's discussion of this point with which we fully agree. In view of the foregoing, we conclude that *295 respondent did not abuse her discretion in requiring petitioner to report its income on the accrual method. Section 6653(a) imposes an addition to tax where any part of the underpayment is due to negligence or disregard of the rules or regulations. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances; petitioner has the burden of proof. Birth v. Commissioner, 92 T.C. 769, 770 (1989). Neither party has cited to us any case in which respondent has determined an addition to tax for negligence because the taxpayer utilized an erroneous method of accounting. Respondent's attempt to derive sustenance from Asphalt Products Co. v. Commissioner, supra, is disingenuous to say the least. In that case, the taxpayer was found negligent in respect of an erroneously claimed deduction unrelated to the change of accounting method. Because of the language of section 6653(a), the Supreme Court held that the addition to tax for negligence extended to the entire deficiency. The resolution of the issue never involved the question of negligence in respect of the change of accounting *296 question. Our research has produced the only case in which the addition to tax for negligence was determined in connection with a change in the taxpayer's method of accounting. We dealt with the issue as follows in Gilbert v. Commissioner, a Memorandum Opinion of this Court dated June 18, 1952: While it is obvious that the petitioner erroneously reported his income in the taxable years involved on a cash basis, the evidence shows that such practice has been followed for many years, and the principal part of the deficiencies determined results from the change required by the respondent in the method of reporting income. The petitioner kept sufficient books and records from which his accrued income could be ascertained. We are unable to discover in this record any basis sufficient to support a finding of negligence or intentional disregard of rules and regulations. The five per cent addition to the deficiencies to be determined under Rule 50 is, therefore, disallowed. We think the above articulation fits the factual pattern of this case precisely, particularly since petitioner's returns were prepared by a certified public accountant, and there is no claim by respondent that *297 they did not have complete information available to them. We hold that petitioner is not liable for the additions to tax under section 6653(a). Section 6661 presents a different question. The touchstone for the application of this section does not depend upon the presence or absence of negligence. In order to be relieved of the section 6661 addition to tax, there must have been adequate disclosure of the relevant facts (where, as is the case herein, a tax shelter is not involved) on the taxpayer's return or alternatively the taxpayer's position must be supported by substantial authority. Sec. 6661(b)(2)(B). Petitioner does not argue that there was adequate disclosure on its 1987 return, nor do we think such disclosure was made. Rather, petitioner rests its case on the claim of substantial authority because it utilized the cash method of accounting which was specifically authorized by statute and regulation. We are not prepared to adopt such an automatic test, at least where the case law rejects the use of the cash method under circumstances such as exist herein and particularly where one of the cases is Asphalt Products Co. v. Commissioner, supra, decided *298 by the Court of Appeals to which an appeal herein would lie prior to the time petitioner's 1987 return was filed. To do so would do violence to the substantial authority standard set forth in section 1.6661-3(a)(2), Income Tax Regs.: The substantial authority standard is less stringent than a "more likely than not" standard (that is, a greater than 50-percent likelihood of being upheld in litigation), but stricter than a reasonable basis standard (the standard which, in general, will prevent imposition of the penalty under section 6653(a), relating to negligence or intentional disregard of rules and regulations). Thus, a position with respect to the tax treatment of an item that is arguable but fairly unlikely to prevail in court would satisfy a reasonable basis standard, but not the substantial authority standard. The application of this standard precludes petitioner from being relieved of the addition to tax under section 6661 by virtue of the fact that we found its reliance on the advice of its accountant sufficient to relieve it of the section 6653(a) additions to tax. Antonides v. Commissioner, 91 T.C. 686, 700-704 (1988), affd. 893 F.2d 656 (4th Cir. 1990). *299 [4]
Petitioner also argues that respondent should have waived the section 6661 addition to tax because of the following provisions of section 1.6661-6(b), Income Tax Regs.: Reliance on an information return or on the advice of a professional (such as an appraiser, an attorney, or an accountant) would not necessarily constitute a showing of reasonable cause and good faith. Similarly, reliance on facts that, unknown to the taxpayer, are incorrect would not necessarily constitute a showing of reasonable cause and good faith. Reliance on an information return, professional advice, or other facts, however, would constitute a showing of reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith. * * * Here, again, it is clear that reliance on professional advice will not necessarily avoid the section 6661 addition to tax. Moreover, we have held that a taxpayer must *300 show abuse of discretion in order to maintain the position that respondent should have provided such a waiver. Mailman v. Commissioner, 91 T.C. 1079, 1085 (1988). Clearly, we cannot say that petitioner has carried its heavy burden of proof in this regard in light of the case law rejecting its position herein. Cf. Cloud v. Commissioner, 97 T.C. 613, 631 (1991). We hold that petitioner is liable for the addition to tax under section 6661. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code in effect for 1986, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The briefs reflect a disagreement between the parties as to the amount of the sec. 481 adjustment, in the event that we hold that petitioner must use the accrual method of accounting. It appears, however, that this disagreement may be resolvable in connection with the entry of decision under Rule 155, and we are willing to await that event.↩
3. There is a subsidiary question of the appropriateness of respondent's inventory adjustment of $ 18,432 representing work-in-process at the end of the 1987 fiscal year. It appears, however, that respondent's computation is in need of corrective treatment and that the amount of such adjustment can be taken care of under Rule 155. As in the case of the sec. 481 adjustment, see supra↩ note 2, we are willing to await that event.
4. See also Weintrob v. Commissioner, T.C. Memo. 1991-67↩.